*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0044p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

        *v.*                                          No. 09-5120

CALVIN LEE GODDARD,
              *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 07-00134-002—Joseph M. Hood, District Judge.

Argued: January 13, 2011

Decided and Filed: February 10, 2011

Before: KENNEDY, CLAY, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David E. Mills, THE MILLS LAW OFFICE LLC, Cleveland, Ohio, for
Appellant.   Ron L. Walker, Jr., ASSISTANT UNITED STATES ATTORNEY,
Lexington, Kentucky, for Appellee.  **ON BRIEF:** David E. Mills, THE MILLS LAW
OFFICE LLC, Cleveland, Ohio, for Appellant. Ron L. Walker, Jr., Charles P. Wisdom,
Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

KENNEDY, Circuit Judge.  Calvin Goddard pleaded guilty to attempting to
possess with intent to distribute 500 grams or more of cocaine and to criminal forfeiture.
After rejecting Goddard's request to withdraw his guilty plea, the district court imposed
a 180-month sentence.  Goddard appeals the district court's denial of his motion to

withdraw his guilty plea and claims that he was denied counsel during the hearing on his motion to withdraw the guilty plea. For the reasons that follow, we **AFFIRM**.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Pre-Sentence Investigation Report ("PSR"), in 2006 law enforcement officials began investigating the drug-trafficking activities of one Otto Frank Willhite. Investigators believed that Willhite conspired with others, including defendant-appellant Goddard, to distribute cocaine and Oxycontin pills in central Kentucky. On June 22, 2007, officers with the Lexington Police Narcotics unit, utilizing a confidential informant, arranged to sell two kilograms of cocaine to Goddard. Goddard and Willhite arrived at an agreed location, began the transaction, and were arrested. The police found 29.18 grams of cocaine in the car, along with 0.3 grams of cocaine in the center console of the vehicle.

Goddard was initially indicted on three counts: two cocaine-related counts (21 U.S.C. §§ 841(a)(1) and 846) and a criminal forfeiture count (21 U.S.C. § 853). A Superseding Indictment added more counts and defendants, notably adding a claim for conspiracy to distribute Oxycontin pills (21 U.S.C. §§ 841(a)(1) and 846) against Goddard. A Second Superseding Indictment added an additional defendant. Goddard pleaded not guilty to each indictment and was released on bond pending trial. Trial was delayed because Goddard filed three motions to continue for medical reasons, all of which were granted.[1]

Goddard subsequently filed a motion for rearraignment. At the rearraignment hearing on September 29, 2008, the day prior to trial, Goddard pleaded guilty pursuant to a written plea agreement to Count One (attempting to possess with intent to distribute

---

[1]Goddard suffers from serious health problems. In April 2007, a tumor was discovered in his lower left jaw, and he was diagnosed with large-cell neuroendocrine carcinoma, an aggressive and rare form of cancer. Goddard had surgery in May 2007 to remove the tumor, and he later developed facial nerve paralysis, which led to the complete paralysis of the left side of his face. Because he could not close his left eye, he was in danger of losing it. In August 2007, Goddard began a series of aggressive radiation treatments, including approximately eighteen sessions over the next two months. He was also fitted with a weighted gold implant in his left eye to help close it. Doctors performed a radical right facial dissection in a continued effort to remove cancerous cells. At the time of his rearraignment in September 2008, Goddard's counsel stated that Goddard had numerous medical issues still to address, including removal of a catheter port in his chest and an upcoming nerve-graft surgery.

500 grams or more of cocaine, in violation of 21 U.S.C. § 846) and Count Nine (criminal forfeiture) of the Second Superseding Indictment, and sentencing was scheduled for January 5, 2009. During the rearraignment hearing, Goddard was placed under oath and the court established that he was competent, that he had seen and discussed the indictment with his attorney, and that he was fully satisfied with his counsel and the advice rendered by his counsel. Goddard acknowledged that he was not under a mental disability, that he had not been forced or coerced to enter a guilty plea, and that he had reviewed the plea agreement with his attorney and understood it. Goddard further acknowledged that he understood that he could receive a term of imprisonment of life as mandated by the statute and that he would not be able to withdraw his plea upon sentencing. Thereafter, Goddard admitted his guilt and was immediately placed in custody.

On October 7, 2008, Adele Burt Brown, retained counsel for Goddard, filed a motion to withdraw Goddard's guilty plea or, in the alternative, for Goddard to be released from custody, and to withdraw as counsel. In the motion, Attorney Brown explained that Goddard would not have pleaded guilty "if he had known [that] he would not have [had] an opportunity to try to obtain a 5k motion" to decrease his sentence for cooperation with the government. Goddard believed that he would have "several additional weeks to work on earning that motion for sentence reduction. He was not aware until shortly before he entered his plea that it was possible that he would be incarcerated immediately." The motion further explained that

> [T]he undersigned attorney was not aware of the Court's policy of immediately incarcerating defendants after entry of pleas in presumption cases; counsel informed Defendant that he would likely be incarcerated if he were convicted at trial[,] but that he would probably be permitted to self-surrender if he entered a guilty plea, since the government was not seeking immediate incarceration but instead was willing to allow him to attempt to co-operate with law enforcement authorities.

> Because counsel failed to anticipate that Defendant would be taken into custody after entry of his plea and would not have any additional chance to earn a motion from the United States, Defendant wants his attorney to withdraw from this case.

Nowhere in Goddard's motion to withdraw his guilty plea did his counsel mention that Goddard wanted to remain outside of prison for medical reasons.

Goddard also submitted a letter to the district court, which was filed in the record on October 8, 2008. In the letter, Goddard explained that he had written a letter to Attorney Brown requesting that she file the motion to withdraw the plea and to withdraw as counsel. He explained that he planned to contest her effectiveness as counsel and that he wished the court to appoint him counsel for any further proceedings.

On October 9, 2008, the district court held a hearing on the motions. During the hearing, Attorney Brown advised the court that Goddard's "request to withdraw his guilty plea does not seem to be based on his belief that he is not guilty but that he should not be in custody." Attorney Brown explained that Goddard "did not anticipate that he would be placed in custody then [immediately following the entry of his guilty plea]." As she further explained, Goddard "had been discussing with the government the opportunity to continue to get a 5(k) motion. And he was supposed to have maybe two or three more weeks to work on [cooperating with law enforcement] before he went into custody, or at least that's what we anticipated." Attorney Brown also noted that Goddard was concerned about being in custody given his medical issues and explained that the best remedy would be for him to remain out of custody "for a couple more weeks." The court asked Goddard if he had anything to add to his counsel's explanation of the situation and he demurred.

The court then explained that there was a multi-factor test governing the withdrawal of pleas and that the only factor of that test that enured to Goddard's benefit was the short period of time between the plea and the motion to withdraw the plea. However, the court specifically noted that Goddard did not seek to withdraw his plea because he was claiming innocence, but rather because he "didn't get a chance to cooperate," which the court explained might or might not have been true. The court then explained at length the conduct that Goddard had admitted to in both the plea agreement and at the rearraignment. The court also mentioned that Goddard continued to engage in illegal activities while free on bond. The court then permitted Goddard to

speak at the hearing and Goddard engaged in a lengthy soliloquy about how he had been denied the opportunity to offer his cooperation to authorities, but at no point did he mention that he sought to be free from incarceration in order to deal with medical issues. The court denied the motion to withdraw Goddard's plea, granted Attorney Brown's motion to withdraw, and set a sentencing date.  Goddard, acting *pro se*, filed an interlocutory appeal with this court on October 14, 2008 *inter alia* challenging the district court's denial of his motion to withdraw his guilty plea.  We denied the appeal insofar as it attempted to obtain interlocutory review of the denial of the motion to withdraw.

Thereafter, the district court appointed Goddard new counsel and sentencing was rescheduled for January 26, 2009.   The Probation Office calculated Goddard's Guidelines range to be 360 months' imprisonment to life.  Prior to sentencing, the government filed 5K1.1 motions on Goddard's behalf seeking a reduced sentence—the result Goddard had sought through his attempts to cooperate with the government.  The court granted the government's motions and sentenced Goddard to 180 months' imprisonment.  The court dismissed the remaining charges against Goddard.

Goddard timely appealed.

**ANALYSIS**

*I.  Goddard's Motion to Withdraw His Plea*

Goddard first argues that the district court should have permitted him to withdraw his guilty plea.  "A defendant may withdraw a plea of guilty" before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  We review a district court's denial of a defendant's motion to withdraw a plea for an abuse of discretion.  *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).  A district court abuses its discretion when it "relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard."  *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006).

The rule regarding the withdrawal of guilty pleas is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quotation and citation omitted). "[I]t is well settled that the movant has the burden of establishing that his presentence motion to withdraw his plea should be granted." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987).

In *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), superseded on other grounds by statute as recognized in *United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000), we set forth the considerations that should be given to determine whether the defendant has set forth a "fair and just reason" for the withdrawal of the plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

These factors represent "a general, non-exclusive list and no one factor is controlling." *Bazzi*, 94 F.3d at 1027.

The district court acted within its discretion in concluding that the application of these factors did not entitle Goddard to withdraw his guilty plea. In considering these factors, the only ones that unquestionably favor Goddard are the first two: the amount of time elapsed before seeking to withdraw the guilty plea and the reason for any delay.

Goddard argues on appeal that the innocence factor "has little weight here," and suggests that "[t]o the extent this Court has generally given weight to this factor, contrary to the Supreme Court's [precedent in *Kercheval v. United States*, 274 U.S. 220,

224 (1927)], this Court should disavow that practice." We disagree. Goddard signed a plea agreement listing the facts constituting the crime to which he pleaded guilty. He was asked about the crime's factual predicate under oath in court prior to the district court accepting his guilty plea. He agreed to the conduct he was charged with, except that he claimed not to remember the presence of any digital scales for weighing cocaine for sale. Indeed, even in his motion to withdraw his plea and at the hearing on his motion to withdraw his plea, Goddard did not claim to be innocent. As Goddard himself stated:

> Withdrawing my plea doesn't necessarily mean that I am innocent. But it says that I want to enjoy my right to trial. I believe there are enough discrepancies in the state case that I have a good chance, and I am willing to take that chance. I am not saying that I am completely innocent. But a lot of stuff in that case that is said I have to agree to to get to this plea bargain, but they are not true.

Quite plainly, the *Bashara* prong regarding an assertion of innocence does not enure to Goddard's benefit. *See United States v. Baez*, 87 F.3d 805, 809 (6th Cir. 1996) ("Some courts have held that the absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea.").

Relatedly, the circumstances surrounding Goddard's plea are unremarkable. On appeal, Goddard argues that this factor weighs in his favor for four reasons: (1) Goddard's counsel did not believe that Goddard would be immediately placed into custody; (2) the district court relied on an unproven rumor that Goddard was selling drugs while on bond; (3) the district court failed to comply with Rule 11(b)(F), requiring the district court, after advising the defendant of his trial rights, to advise the defendant that a guilty plea expressly waives those rights; and (4) Goddard was effectively denied counsel at the hearing on his motion to withdraw. The first and fourth arguments facially fail. In his motion to withdraw his plea, Goddard admitted that he was made aware shortly before he entered his plea that it was possible that he would be incarcerated immediately. Further, whether Goddard was effectively denied counsel at the hearing on his motion to withdraw subsequent to his rearraignment is irrelevant to the circumstances of his plea. While the district court did comment on a rumor that

Goddard had sold drugs while on bond, at the rearraignment proceeding, without prompting, Goddard's counsel had acknowledged having heard about this activity. Finally, the district court specifically addressed Goddard's trial rights and though it did not specifically note that Goddard would waive them by pleading guilty, the colloquy sufficiently satisfied Rule 11(b)(F).

Goddard's nature and background support the district court's denial of his motion to withdraw his guilty plea. He was well-educated,[2] suggesting that he understood the consequences of his actions. *See United States v. Quinlan*, 473 F.3d 273, 278 (6th Cir. 2007) (noting that a defendant can understand the consequences of a plea agreement when possessing a sufficiently robust educational background); *Ellis*, 470 F.3d at 285 (same). Though we have previously noted that health problems can lead to this factor being counted in a defendant's favor, *see United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007), we are unpersuaded that Goddard's health problems presented a fair and just reason for the district court to permit him to withdraw his plea.

"The sixth factor the Court considers to determine whether Defendant's motion to withdraw the guilty plea is for a fair and just reason is the degree to which Defendant has had prior experience with the criminal justice system." *Ellis*, 470 F.3d at 285. Goddard had two prior drug felony trafficking convictions along with at least two felony drug convictions. Thus, Goddard had sufficient contact with the criminal justice system to fully understand his rights and the process.

Finally, "the government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987). At the time Goddard moved to withdraw his plea, the government would not have been prejudiced. However, because Goddard had not established a fair and just reason for the district court to allow the withdrawal, this factor was immaterial to the district court's decision.

---

[2]According to the PSR, Goddard reported earning bachelors, masters, and doctorate degrees in theology.

Consequently, because the district court's analysis of Goddard's motion to withdraw his guilty plea was properly conducted pursuant to *Bashara*, we conclude that the district court did not abuse its discretion in denying the motion.

II.     *Goddard's Representation at the Hearing on His Motion to Withdraw His Guilty Plea*

Goddard's second argument is that he "was denied his right to counsel at the plea-withdrawal hearing." He claims that:

> The court was well aware that Goddard alleged that [his] counsel was ineffective for misinforming him that he would not be taken into custody [following his guilty plea]. . . . Instead of assessing whether a conflict indeed existed, however, the court proceeded to conduct the plea-withdrawal hearing. This forced Goddard to act as his own attorney, contrary to his request for appointed counsel. Then, at the end of the hearing, the district court stated that counsel's motion to withdraw as Goddard's attorney was granted. Not only was this procedure backwards, it reveals that the district court concluded that Brown should no longer be Goddard's attorney—precisely what should have been resolved at the outset.

This claim is misleading—Goddard unquestionably had counsel at the plea-withdrawal hearing because the district court had not granted his attorney's motion to withdraw as counsel until after it denied Goddard's motion to withdraw his guilty plea. Goddard's argument on appeal is that because he no longer wished to be represented by Attorney Brown at the time of the hearing on the motion to withdraw the guilty plea, Attorney Brown therefore had a conflict of interest in representing Goddard at the hearing and he was thereby constructively denied the assistance of counsel. Moreover, Goddard's argument on appeal that he was forced to argue in support of this motion *pro se* is contradicted by the record. Goddard only spoke to the court after Attorney Brown had argued the motion, the court had considered it, and the court had denied it. Consequently, Goddard's argument fails.

We have previously held that "where a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction—regardless of whether the attorney is

court-appointed or privately retained." *Rodriguez Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008).  However, this rule is not implicated here because the district court's disposition of Goddard's motion to withdraw his plea before deciding whether to permit Attorney Brown to withdraw logically followed from Goddard's conduct.  The record establishes that Goddard made two requests of Attorney Brown following his guilty plea: (1) that she file a motion to withdraw his guilty plea and (2) that she seek to withdraw as counsel.  Goddard did not ask that she withdraw as counsel and *then* seek new counsel to attempt to withdraw his plea—the requests were made simultaneously.  Attorney Brown precisely followed Goddard's instructions: she filed a motion to withdraw his guilty plea and to withdraw as counsel in a single pleading.  On appeal, Goddard argues that the district court should have considered the latter argument first and then appointed counsel to argue the former motion.  But this would have thwarted Goddard's expressed desire and denied him the representation of the attorney he had retained[3] and implicitly wished to argue the motion.  Had Goddard not wanted Attorney Brown to argue to the court that his guilty plea should have been withdrawn, he would not have specifically instructed her to file the motion and sent a letter to the court confirming this instruction.  Quite obviously, if Attorney Brown sought to withdraw as counsel first, she could not have filed a motion to withdraw Goddard's plea.  Consequently, our admonition to district courts in *Rodriguez Benitez* is not implicated here.  In this case, the district court knew about Goddard's dissatisfaction with Attorney Brown, but it also knew that Goddard had directed her to file a motion to withdraw his guilty plea, with the reasonable presumption that she, the author of that motion, would then argue it to the court.

Further, neither Attorney Brown nor Goddard requested that another attorney argue the motion to withdraw the guilty plea at the hearing.  Consequently, we review the district court's actions for plain error.  *United States v. Vonn*, 535 U.S. 55, 66 (2002) ("A defendant's right to review of error he let pass in silence depends upon the plain

---

[3]Goddard's appeal frequently cites precedent regarding indigent defendants and their appointed counsel.  Attorney Brown was not appointed counsel, however; she was retained, a fact that Goddard's appellate counsel conceded at oral argument.  Following her withdrawal, Goddard established that he was indigent and was appointed counsel.

error rule."). Had Goddard not wanted Attorney Brown to represent him at the hearing on his motion to withdraw his guilty plea, he could have said so or asked her to say so. The district court provided both Attorney Brown and Goddard an opportunity to be heard prior to ruling on the motion.[4] Instead, Goddard's conduct was in conformity with his expressed intention for Attorney Brown to file a motion to seek to withdraw his guilty plea. As the transcript reflects, the district court requested argument from Attorney Brown on the motion to withdraw the guilty plea and then, after she had presented the issue, addressed Goddard and specifically asked "Mr. Goddard, do you have anything that you would like to say?" and he responded "No." At that juncture, Goddard could have quite easily replied: "Yes, I want new counsel to argue my motion to withdraw my guilty plea." He did nothing of the sort. The district court then discussed the factors involved in a withdrawal of a guilty plea and denied the motion. Only then did Goddard request the opportunity to speak and the court permitted him to do so at length. And even at this time, Goddard did not complain that Attorney Brown had argued the motion to withdraw. Goddard instead complained at length about his inability to cooperate with the government and the contents of the plea agreement he had signed.

Consequently, Goddard's argument that he was denied representation at the hearing on his motion to withdraw his guilty plea fails and the district court did not commit plain error in the order in which it ruled on the motions. Goddard unquestionably had representation at the hearing—the counsel that he had retained and that he had directed to file the motion.[5] It is illogical for him to now claim that he did not wish to be represented by Attorney Brown at the hearing on the motion that he

---

[4] It is certainly true that the district court, faced with a combined motion from Goddard to withdraw his guilty plea and to permit Attorney Brown to withdraw as counsel, could have questioned either or both individuals about what Goddard's preference was in regard to whether he preferred Attorney Brown to argue the motion to withdraw the guilty plea. But the district court's decision to proceed in the manner suggested by the motions filed, to permit the attorney who filed the motion to withdraw the plea argue the motion to withdraw the plea, was not plain error.

[5] For this reason, Goddard's citation to *United States v. Sanchez-Barreto*, 93 F.3d 17 (1st Cir. 1996), is distinguishable. There, the defendant had filed a *pro se* motion to withdraw the guilty plea and the defendant's counsel *sua sponte* moved to withdraw as counsel. *Id*. at 22. Here, Goddard instructed his attorney to file the motion to withdraw his plea and to seek to withdraw as counsel. The conflict that led the First Circuit to reverse in *Sanchez-Barreto* is not present in this case.

instructed her to file without support—nothing in the record suggests that Goddard did not want Attorney Brown to argue the motion that he instructed her to file.**6**

For these reasons, we **AFFIRM**.

---

**6**To the extent that Goddard is arguing that Attorney Brown provided ineffective assistance at the hearing on his motion to withdraw his guilty plea or at other times during her representation of him, we decline to address the issue. As is our custom, we generally do not review such claims on direct appeal, preferring that the defendant raise such claims (if at all) in a § 2255 petition. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (observing that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance"); *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) ("As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal."). Though the government construes Goddard's second argument on appeal as one regarding Attorney Brown's effectiveness, Goddard does not and we therefore decline to consider the effectiveness of Attorney Brown at this time.