NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0144n.06

No. 21-3159

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Apr 05, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| MYRON BAKER, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: DONALD, THAPAR, and LARSEN, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Following the execution of a search warrant on his residence, Baker faced charges of conspiracy to distribute carfentanil, distribution of carfentanil, distribution of carfentanil leading to serious bodily injury and death, and being a felon in possession of a firearm. Baker unsuccessfully moved to suppress the evidence obtained from his residence and, on the morning of trial, entered into a conditional plea agreement with the government. Thirty-nine days later, Baker moved to withdraw his plea claiming that he was emotionally coerced and innocent of the charges. After a four-day evidentiary hearing and subsequent briefing, the district court denied the motion to withdraw. The denial of Baker's motion to suppress and motion to withdraw his guilty plea form the bases of this appeal. For the following reasons, we affirm.

## I.

On March 31, 2017, Officer Patrick Bell and Detective Tim Braun, task force officers with the City of Dayton Police Department, received a tip from a confidential informant implicating Baker in two drug overdoses, one of which resulted in death. The informant alleged that Baker sourced the lethal doses of fentanyl and heroin. According to the informant, Baker regularly prepared fentanyl and heroin for sale at his residence in Dayton, Ohio.

Based on these allegations, Detective Braun asked Detectives Dustin Phillips and Jason Rhodes to secure physical surveillance on Baker's residence. On the morning of April 4, 2017, Detectives Phillips and Rhodes responded to the location and identified a car believed to be Baker's parked on the street in front of the residence. An hour later, they saw Baker exit the front door of the residence and briefly get into the driver's side of the car. Baker then got out of the car and entered the passenger side of an SUV located a few houses down the street.

Detectives Phillips and Rhodes followed the SUV to Delphos Carryout. Detective Phillips watched Baker exit the vehicle and enter the carryout. He followed Baker inside, located him near the coolers, and called him by name. Baker turned around and, according to Detective Phillips, "his eyes opened very wide. He began looking over my shoulder as I was walking directly towards him, past me to where the door was, and this to me kind of posed a little bit of a concern." Detective Phillips then asked Baker, "You don't have any weapons on you, do you?" When Baker answered "no," Detective Phillips responded, "I am going to pat you down, okay?" Baker responsively raised his hands, so Detective Phillips asked him to turn around and performed a pat-down. As he patted down Baker's right front pocket, Detective Phillips felt an object he recognized as illegal drugs. Detective Phillips removed the object and identified it as a bag containing two separate

bags of suspected cocaine and suspected fentanyl. Detective Phillips arrested Baker for illegal possession of controlled substances and advised Officer Bell of the arrest.

Officer Bell and Detective Braun subsequently went to Baker's residence to secure the location in hopes of obtaining a search warrant. They knocked at the front door and an individual later identified as Michael Fox answered. Fox invited the officers inside and they immediately performed a sweep of the house. During the sweep, the officers found a digital scale lying on a desk in an upstairs bedroom. Officer Bell then left the scene to prepare an affidavit in support of a search warrant based on that morning's events.

Detective Braun stayed on the scene to interview Fox. Fox informed Detective Braun that he had been staying at the house for a few weeks. According to Fox, Baker hired him to remodel the bathroom and paid him one-half a gram of heroin a day. Fox alleged that he had seen large bags of heroin in the residence on multiple occasions, including the previous evening. He reported that Baker and a woman named Tarra Geiger mixed heroin and fentanyl at the residence to prepare for sale. Fox stated that he occasionally drove Baker and Geiger to Gallipolis, Ohio for drug sales. He also disclosed to Detective Braun that Baker knew of the overdose death and appeared extremely nervous about the news. Detective Braun relayed this information to Officer Bell, who included it in the affidavit in support of a search warrant.

Officer Bell presented the affidavit and search warrant to a judge at the Dayton Municipal Court that afternoon. The municipal court judge authorized the search warrant and Officer Bell returned to the residence for its execution. The officers discovered two firearms, a DVR camera system, and a ballistic vest at Baker's residence.

**II.**

A federal grand jury returned a multi-count indictment against Baker, charging him with conspiracy to possess with intent to distribute carfentanil, fentanyl, and heroin; distribution of carfentanil resulting in death; distribution of carfentanil resulting in serious bodily injury; being a felon in possession of a firearm; and maintaining a drug premises. A jury trial was eventually scheduled for November 4, 2019.

Leading up to trial, Baker filed three related motions to suppress. He requested suppression of, among other things, evidence seized pursuant to the search warrant of his residence. Baker argued that the warrant was not supported by probable cause. Following an evidentiary hearing, the district court denied the motions. The court determined that the two informants' statements and the physical surveillance of the residence provided sufficient probable cause to search.

On November 4, 2019, the day scheduled for trial, Baker entered into a conditional plea agreement. The agreement provided that Baker would plead guilty to two counts—conspiracy and distribution of carfentanil resulting in death—and, in return, the government would dismiss the remaining three counts. The parties also agreed to an aggregate prison term of 240 to 292 months. Baker reserved the right to appeal the adverse ruling on his motions to suppress. The court conducted a plea hearing and accepted Baker's plea after finding that it was knowingly and voluntarily made.

Thirty-nine days later, before sentencing, Baker filed a *pro se* motion to withdraw his guilty plea. Baker alleged that he was coerced into pleading guilty due to the "severe emotional distress" caused by his mother, friend, and counsel during plea negotiations. The district court struck the *pro se* motion, noting that Baker was still represented by counsel and that hybrid representation was prohibited. Twenty-one days later, Baker filed another *pro se* motion to withdraw his guilty

plea on the same grounds. This time, the court accepted the motion and held a four-day evidentiary hearing. After the hearing, the court concluded that Baker had not shown a fair and just reason for withdrawal and denied the motion.

On February 11, 2021, the court imposed an aggregate sentence of 288 months' imprisonment. This timely appeal followed.

**III.**

Baker first contends that the trial court committed structural error by denying his motions to suppress based on a search warrant not filed in the record.

On its face, Baker's argument seems to challenge the district court's consideration of evidence outside the record. However, that argument is factually inaccurate. Although it was not filed in the docket, the search warrant was properly made part of the record at the suppression hearing. The government introduced the search warrant and the affidavit in support during its direct examination of Officer Bell. At the conclusion of its case, the government moved to admit the warrant into evidence. Defense counsel objected to the lack of probable cause but did not object to the authenticity of the document. The court subsequently received it into evidence. On appeal, the government filed the search warrant and affidavit in support to make the exhibit available for appellate review. *See* 6th Cir. R. 10(b)(1) ("For paper exhibits that are not part of the district court's electronic record and that are necessary for the court to understand the issues and decide the appeal, a party may file an appendix with: manageable paper exhibits[.]").

The crux of Baker's argument, however, appears to be the actual failure to file the search warrant in the federal docket. Curiously, Baker does not allege the absence of a valid warrant; he alleges only that one was never filed in the record below. Baker contends that the Constitution requires search warrants be filed in the record; "[m]erely talking about them or informally

5

disclosing them between parties is insufficient." [Appellant Brief, p. 46] Baker does not cite, and we cannot find, any authority to support his proposition.

The plain language of the Fourth Amendment does not help Baker either. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This language expressly circumscribes only the issuance of warrants, not the filing of warrants.

Unlike the text of the Fourth Amendment, the Federal Rules of Criminal Procedure do expressly address the filing of warrants. However, they do not control under the particular circumstances of this case. Rule 41(i) directs the magistrate judge to deliver all papers relating to the search warrant to the clerk's office in the district where the property was seized. Fed. R. Crim. P. 41(i). But Rule 41 applies only where a warrant is sought by a federal law enforcement officer. *United States v. Dudek*, 530 F.2d 684, 688 (6th Cir. 1976); *United States v. Jones*, 471 F.3d 868, 871 (8th Cir. 2006). It is inapplicable where, as here, the warrant was sought and executed entirely by state law enforcement officers. *Id.*

The Ohio Rules of Criminal Procedure also cannot come to Baker's aid. It is a "commonly-held position . . . that federal, not state, law governs the question of the validity of a search warrant in a federal criminal proceeding." *United States v. Shields*, 978 F.2d 943, 945 (6th Cir. 1992).

Because Baker can point to no authority requiring reversal based only upon the government's failure to file the search warrant and affidavit in support in the federal docket, he cannot demonstrate error, let alone prejudicial error.

**IV.**

Baker next argues that the district court erred by denying his motion to withdraw his plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). We review a district court's denial of a motion to withdraw a plea for an abuse of discretion. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (per curiam).

"A defendant may withdraw a plea of guilty" before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). It is well settled that the defendant bears the burden of proving that he is entitled to withdraw his guilty plea. *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987); *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006); *United States v. Goddard*, 638 F.3d 490, 494 (6th Cir. 2011).

In determining whether a defendant has shown a "fair and just reason" for withdrawal of his guilty plea, the court may consider the following factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Goddard*, 638 F.3d at 494 (quoting *United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). This is "a general, non-exclusive list and no one factor is controlling." *Bazzi*, 94 F.3d at 1027. We consider each in turn.

A. Length of delay and reason for delay.

Baker entered his guilty plea on November 4, 2019 and filed his first *pro se* motion to withdraw on December 13, 2019—39 days later. Our caselaw does not provide particularly strong guidance on the length of this delay. We have twice suggested that a 30-day delay weighs in the

defendant's favor. *See United States v. McCoy*, 155 F. App'x 199, 203 (6th Cir. 2005) (30-day delay weighed in defendant's favor); *United States v. Jannuzzi*, No. 07-4521, 2009 WL 579331, *3 (6th Cir. Mar. 6, 2009) (slip opinion) (same). But we have also suggested that delays not too far outside of that time period weigh in the government's favor. *See United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (36-day delay weighed in government's favor); *United States v. Jackson*, 238 F. App'x 45, 48 (6th Cir. 2007) (40-day delay weighed in government's favor).

Nonetheless, the district court did not consider the length of delay in isolation. Instead, the court considered the 39-day delay in the context of Baker's reason for failing to move for withdrawal earlier. Baker testified that he immediately regretted his plea and expressed a desire to withdraw to his mother, friend, and counsel within one or two days afterwards. His mother and counsel testified to the same. Baker complained that his attorney never filed a motion to withdraw. Counsel confirmed that he would not file a motion to withdraw given the fact that he represented Baker at the plea colloquy and affirmed the voluntariness of Baker's plea at that colloquy. Based on these representations, the court determined that the first two factors weighed in favor of Baker.

The government contends that the district court could not act on Baker's intentions alone and Baker's frequent *pro se* filings demonstrate that he could have filed sooner. However, a review of the record shows that the district court repeatedly admonished Baker for filing *pro se* motions while represented by counsel. In fact, the court initially struck the December 13 motion to withdraw because "[Baker] was still represented by counsel and hybrid representation is prohibited." Under these circumstances, we cannot say that the district court abused its discretion in finding that the first two factors weighed in favor of Baker.

However, our inquiry does not end here. "Regardless . . . of the weight given to the timeliness factor, a defendant must demonstrate that the remaining relevant factors viewed as a

whole weigh in his favor to be entitled to relief." *United States v. Goodloe*, 393 F. App'x 250, 254 (6th Cir. 2010).

B. Assertion of Innocence.

The third factor looks to whether the defendant "has consistently and vigorously maintained his innocence." *United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007). A review of the record shows that Baker asserted his innocence before and after his guilty plea. During the entire two-year pendency of the case, Baker adamantly insisted on going to trial. One week after his plea, Baker "stood mute on acceptance and provided no statements regarding his acceptance of responsibility" during his interview with the probation officer. Baker testified that he "didn't want to make a statement accepting responsibility because [he] was innocent." In his motion to withdraw, Baker asserted his innocence as a basis to withdraw his plea.

Notably, however, Baker signed a plea agreement confirming his guilt and the factual bases for the charges. He also unequivocally admitted his guilt at the plea colloquy. When asked "are you entering these pleas to these charges because you are, in fact, guilty as charged?" Baker responded, "Yes, Your Honor." "Absent extraordinary circumstances . . . we hold a defendant pleading guilty to the statements he makes at his plea hearing." *United States v. Watkins*, 815 F. App'x 22, 25 (6th Cir. 2020). Thus, "[s]tatements of guilt under oath at a plea hearing support the district judge's decision not to permit withdrawal." *United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) (citation omitted); *see also United States v. Lineback*, 330 F.3d 441, 444 (6th Cir. 2003) (defendant's admission of guilt at plea colloquy weighed in favor of government); *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007) (same); *United States v. Young*, 310 F. App'x 784, 793 (6th Cir. 2009) (same).

Under these circumstances, Baker's pre- and post-plea assertions of innocence fall short of the "vigorous and repeated protestations of innocence" our caselaw requires to support withdrawal of a guilty plea. *United States v. Baez*, 87 F.3d 805, 809 (6th Cir. 1996). Accordingly, the district court did not abuse its discretion in finding that the third factor weighed slightly against Baker.

C. Circumstances Underlying Entry of Guilty Pleas.

Baker's main argument on appeal is that the fourth factor—the circumstances underlying the entry of his guilty plea—weighs in his favor. Baker contends that he faced "severe emotional distress" on the morning of the plea. Baker posits that his mother and girlfriend were extremely emotional, crying, and urging him to plead guilty. Baker argues that the emotional state of his mother and friend, combined with the short amount of time that he had to consider the offer, pressured him into pleading guilty.

We have consistently held that "family pressure . . . is not the type of coercion that makes a defendant's acceptance of a guilty plea involuntary." *United States v. Gasaway*, 437 F. App'x 428, 435 (6th Cir. 2011); *United States v. Evans*, 406 F. App'x 946, 949–50 (6th Cir. 2011). And other federal circuits have held the same. *See, e.g.*, *United States v. Schwartz*, 403 F. App'x 781, 785 (3d Cir. 2010) (holding that "family pressure to plead guilty provides an insufficient basis for granting leave to withdraw a plea of guilty"); *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989) (holding that family pressure, though "probative of an accused's *motivation* for pleading guilty . . . does not necessarily show coercion, duress, or involuntariness"); *United States ex rel. Brown v. La Vallee*, 424 F.2d 457, 461 (2d Cir. 1970) (concluding that pressure from lawyers and mother to plead guilty was not coercive, but rather "sound advice").

Furthermore, Baker's claim of coercion is belied by his own conduct on the morning of the plea. A review of the record shows that Baker bargained for several concessions in the plea

agreement. For example, during plea negotiations, Baker requested that the government remove all references to a ballistics vest from the statement of facts so he could qualify for a prison program during his incarceration. In addition, the district court inquired during the plea colloquy whether "anyone [was] forcing you, threatening you, compelling you to do this against your will?" and Baker responded, "No, Your Honor." The court then asked, "You have thought about it. You have weighed all your different options. You have talked to [defense counsel] on numerous occasions, considered everything, and this, then, is what you wish to do to enter these pleas of guilty; is that correct?" Baker responded, "Yes, Your honor." The court further questioned, "And that's a voluntary decision on your part?" and Baker again responded, "Yes, Your Honor." As stated above, "[a]bsent extraordinary circumstances . . . we hold a defendant pleading guilty to the statements he makes at his plea hearing." *Watkins*, 815 F. App'x at 25.

Under these circumstances, we cannot say that the district court abused its discretion in finding that the fourth factor weighed against Baker.

D. Defendant's Nature and Background.

The fifth factor focuses on "whether the defendant was capable of understanding the proceedings brought against him." *United States v. Turner*, 624 F. App'x 331, 337 (6th Cir. 2015) (citation omitted).

Baker claims that "his medication clouded his mind and he was not thinking clearly." [Appellant Brief, p. 55] The district court found this excuse unpersuasive, noting several observations from the plea colloquy. During the colloquy, the court inquired of Baker, "have you had any type of drugs, alcohol, or medication within the last 24 hours?" Baker responded, "No." The court then asked, "So you are clear-headed here this morning?" Baker responded, "Yes, sir." Although defense counsel noted that Baker had some reservations about pleading guilty, counsel

agreed that Baker appeared clear-headed on the day of the plea. The court ultimately determined that Baker "[was] in full possession of his faculties and [was] competent to enter his plea"; that "he [was] not under any apparent influence of narcotics, hallucinogens, alcohol, or medication"; and that Baker understood "the nature of the[] charges to which he has pled and the penalties that are provided by law for those violations." According to the court, "Baker certainly did not express or exhibit any confusion during the plea colloquy." Therefore, Baker's claim that his medications affected his mental state is undermined by the district court's credibility determination. "Unless it has no foundation, we defer to a district court's finding of credibility." *United States v. Butler*, 297 F.3d 505, 513 (6th Cir. 2002) (citation omitted).

There is nothing in the record to otherwise suggest that Baker was incapable of understanding the proceedings brought against him. He earned his GED, attended some college, and presented as "intelligent and sophisticated" during his interactions with the district court. Accordingly, the district court did not abuse its discretion in finding that this factor weighed slightly against Baker.

E.  Defendant's Prior Experience with Criminal Justice System.

The sixth factor concerns the defendant's prior experience with the criminal justice system. "In considering how much experience the defendant has with the criminal justice system, this Court has distinguished those defendants that are 'novice[s] to the criminal law' from those that are 'knowledgeable and shrewd.'" *Turner*, 624 F. App'x at 337 (quoting *Spencer*, 836 F.2d at 240). Here, the district court found that Baker had significant prior experience with the criminal justice system. A review of the presentence investigation report shows that Baker was convicted on guilty pleas of many offenses, including one juvenile adjudication and thirty adult convictions. The court also noted that throughout the pendency of the case, Baker filed several *pro se* motions

and letters to the court that demonstrated a significant understanding of the legal system. Notably, Baker conceded below that this factor "weigh[ed] against permitting him to withdraw his guilty plea."

Baker now contends that his prior experience consisted largely of state-level misdemeanors and traffic offenses. Baker maintains that he had only one prior felony and no experience with federal charges. However, his prior conviction for aggravated robbery indicated that he had "sufficient [prior] contact with the criminal justice system to fully understand his rights and the process." *Goddard*, 638 F.3d at 495. *See United States v. Bell*, 795 F. App'x 398, 404 (6th Cir. 2019) (prior convictions for aggravated robbery and felonious assault indicated sufficient prior experience with the criminal justice system). In 2001, Baker was charged with eight offenses, including various counts of aggravated robbery, aggravated burglary, felonious assault, and kidnapping; he was represented by an attorney; entered into plea negotiations; pled guilty to aggravated robbery in exchange for dismissal of the remaining charges; and completed a six-year prison sentence. The fact that this conviction occurred in state court, and not federal court, is inconsequential. *See Gasaway*, 437 F. App'x at 436 ("[T]here is no distinction between experience in state and federal courts."); *United States v. McIntyre*, 381 F. App'x 535, 539 (6th Cir. 2010) (considering state-court experience); *United States v. Ward*, 356 F. App'x 806, 809 (6th Cir. 2009) (considering "extensive experience with pleading in state courts").

Accordingly, the district court did not abuse its discretion in finding that this factor weighed heavily against Baker.

F. Prejudice to Government.

We have consistently held that the government need not establish prejudice if the defendant has failed to show cause to withdraw a plea. *Spencer*, 836 F.2d at 240.

13

Here, however, the district court found that the government established significant prejudice. Baker's eleventh-hour plea necessitated that the government prepare for what was expected to be a relatively lengthy trial. This included locating witnesses in other states, interviewing those witnesses, and transporting them to Ohio for trial. If Baker were permitted to withdraw his plea, the government would be required to begin anew two years later. This is particularly concerning given that the case had already been pending for two-and-a-half years when Baker entered his plea. Under these circumstances, we cannot say that the district court abused its discretion in finding that the seventh factor weighed against Baker. *See United States v. Martin*, 668 F.3d 787, 797 (6th Cir. 2012) (finding factor weighed against withdrawal where, at the time of the plea, the government was prepared for trial and the amount of time and effort it would take to restart the trial—and the delay's effect on witnesses' memories—would be prejudicial).

G. Summary

Of the seven enumerated factors, two weigh in favor of withdrawal and five weigh against withdrawal. However, the two in favor of withdrawal—the length of delay and reason for delay—are not particularly compelling given the strength of the other five factors. Because the balance of the factors weighs against Baker, he failed to show a fair and just reason for withdrawal. Therefore, the district court did not abuse its discretion in denying Baker's motion to withdraw his guilty plea.

**V.**

For the foregoing reasons, Baker's convictions and sentence are **AFFIRMED**.