NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0288n.06

Case No. 22-3685

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 02, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| MARTIN ESCOBAR, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; STRANCH and DAVIS, Circuit Judges.

SUTTON, Chief Judge. Martin Escobar ran a pain management clinic. There, he created fake medical records to justify prescriptions, doled out alarming amounts of controlled substances to his patients, and ignored medical tests that showed many clients were not using the opioids he prescribed (and thus were presumably selling them). After a grand jury indicted him, he pleaded guilty to illegally distributing opioids and to healthcare fraud. He waived his right to appeal his conviction and sentence, save for challenges to an excessive sentence, the effectiveness of his counsel, or prosecutorial misconduct. Before the plea agreement, the Supreme Court had agreed to hear *Ruan v. United States*. 597 U.S. 450 (2022). Five months after the plea agreement was entered, the Court decided the case, holding that, when a defendant produces evidence that he dispensed controlled substances in connection with a prescription, the government must show he

knew the prescriptions were unauthorized. After the decision, Escobar moved to withdraw his plea. The district court denied his motion. We affirm.

I.

Martin Escobar ran an internal medicine and pain management clinic in northern Ohio. As a licensed medical doctor, Escobar had authority to prescribe controlled substances, including opioids, for a "legitimate medical purpose . . . in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). From 2015 to 2019, as Escobar admitted, he prescribed controlled substances based on shoddy diagnoses, inadequate testing, and falsified medical records. He wrote prescriptions without performing "appropriate diagnostic tests," never documenting symptoms, causes of pain, or patient responses to treatment. R.54 at 8. He instead "used non-modified templates in patient charts, repopulated from visit to visit, that contained false narratives of patient visits that falsely claimed that extensive physical examinations were conducted." *Id.* at 9. He likewise "falsified patient pain intensity scales . . . in order to justify prescribing controlled substances." *Id.* Rounding it out, Escobar "ignored signs of patient addiction and drug abuse," including drug screens showing that his patients were abusing drugs and in some cases were not using the drugs and thus likely selling them on the street. *Id.* at 9–10. A few of his patients died from the illegal prescriptions.

A grand jury charged Escobar with 55 counts of violating the Controlled Substances Act and 30 counts of healthcare fraud. *See* 21 U.S.C. §§ 841, 856, 859; 18 U.S.C. § 1347. Escobar pleaded guilty to all but one of the charges. As to the controlled substances charges, he admitted that he "knowingly or intentionally" dispensed controlled substances, and that his acts were "not for a legitimate medical purpose and [were] outside the usual course of professional practice." R.84 at 4. As to the healthcare fraud charges, he admitted that he "knowingly and willfully" sought

to "defraud health care benefit programs" by billing for unauthorized prescriptions and tests. *Id.* at 16.

During the Rule 11 hearing, Escobar confirmed the accuracy and validity of this plea deal. The court read aloud the agreement, paragraph by paragraph, and explained the factual basis for each count. Escobar pleaded guilty to the relevant counts and affirmed the factual admissions in the agreement. The court did the same with respect to Escobar's waiver of his rights to challenge his conviction or sentence on appeal. The waiver contained three exceptions. It allowed Escobar to challenge a sentence that exceeded the statutory maximum or the guidelines range, to raise a claim of ineffective assistance of counsel, or to raise a claim of prosecutorial misconduct. Escobar confirmed multiple times that he understood the agreement and that he entered it "knowingly, voluntarily" and "of [his] own free will." R.90 at 6, 43–45. The district court agreed and accepted his plea.

Five months after the court approved the plea agreement but before Escobar's sentencing, the Court decided a case pending throughout the plea negotiations, *Ruan v. United States*. 597 U.S. 450 (2022). *Ruan* did not change the elements of a controlled substances charge. It held that, if the doctor defends the charge based on authorization—that he dispensed controlled substances "pursuant to valid prescriptions"—the government must do more than show that the prescriptions lacked "a legitimate medical purpose." *Id.* at 455, 457. The government must prove that the doctor "knowingly or intentionally acted in an unauthorized manner." *Id.* at 457; see *id.* at 464–65 ("Once the defendant meets his or her burden of production, then, the Government must prove lack of authorization beyond a reasonable doubt.").

Escobar moved to withdraw his guilty plea. He argued that neither the government nor the district court explained what became the *Ruan* holding and that he therefore pleaded guilty without

being told the "nature of each charge" against him. Fed. R. Crim. P. 11(b)(1)(G). The factual basis for the plea, he argued, was also insufficient. He admitted only to acting outside the usual course of medical practice, not that he did so knowingly or intentionally. *See id.* 11(b)(3). The district court rejected Escobar's motion because he could not show "a fair and just reason" for withdrawal. *Id.* 11(d)(2)(B). Even with *Ruan* as the relevant law for gauging the plea, Escobar "admit[ted] to the subjective knowledge that he knew that these things were against the law." R.115 at 34. Those factual admissions, "spelled out in the plea agreement," made clear that "there's really no basis upon which to vacate the guilty plea." *Id.* Denying the motion, the district court sentenced Escobar to 300 months in prison. This appeal followed.

## II.

Escobar argues that the district court should have permitted him to withdraw his guilty plea after *Ruan.* Trial judges have considerable discretion over the plea-bargaining process, and we accordingly review decisions to deny a request to withdraw a guilty plea for abuse of discretion. *United States v. Carson*, 32 F.4th 615, 623 (6th Cir. 2022).

Rule 11 requires Escobar to provide "fair and just reason[s]" for withdrawing a plea before sentencing. Fed. R. Crim. P. 11(d)(2)(B). We have identified a range of factors to consider in gauging such requests: the timing of the withdrawal motion, the explanation for it, prejudice to the government, whether the defendant claims innocence, the circumstances surrounding the entry of the plea, and the defendant's characteristics and criminal background. *United States v. Goddard*, 638 F.3d 490, 494 (6th Cir. 2011). Escobar bears the burden of showing that the plea agreement should be undone. *Id.*

Escobar's key argument is that, in light of *Ruan*, he was not informed of the charges against him and he did not knowingly or intentionally write illegal prescriptions under the Controlled

Substances Act. He does not deny his factual admissions. He just claims that they do not add up to violations of the Act.

But the record shows otherwise. Contrary to Escobar's argument, he did not admit merely to shoddy medical practice in connection with the Controlled Substances Act charges. He admitted that he "ignored" signs of addiction. R.84 at 12. He admitted that he used "false diagnoses." *Id.* He admitted that he "falsified patient pain intensity scales." *Id.* He admitted that he used "false narratives of patient visits" to "falsely" claim he performed medical examinations. *Id.* And he admitted that he "knowingly and intentionally" violated the Act. *Id.* at 13. As for the healthcare fraud counts, Escobar said that he "knowingly and willfully" sought to defraud the government based on unauthorized prescriptions, and that he did so with "the intent to defraud." *Id.* at 5. In view of these admissions, the district court found that Escobar "admit[ted] to the subjective knowledge that he knew that these things were against the law" and rejected his attempt to back out of the plea. R.115 at 34. The facts reasonably support that decision, and no abuse of discretion occurred. *See Ruan*, 597 U.S. at 467 (the government can prove knowing lack of authorization "through circumstantial evidence" and through "unreasonable" behavior by the defendant).

Escobar points out that the plea agreement's recitation of the elements of the drug-distribution charges did not specifically state that Escobar had to "knowingly" or "intentionally" write unauthorized prescriptions. This feature of *Ruan* may appear more like a defense than an element of the crime. *See id.* at 464 (noting the requirement "differ[s] from an element in some respects"). But we need not resolve the issue today. For present purposes, the key point is that the factual allegations and admissions show that Escobar did not plead guilty to mere negligence or recklessness on this score. He pleaded guilty to knowingly—and importantly, intentionally—dispensing controlled substances for illegitimate purposes. *See United States v. Page*, 520 F.3d

545, 548 (6th Cir. 2008) (rejecting a Rule 11 challenge because the "totality of the record," including the "factual basis" of plea, showed that the defendant knew the charges against him and pleaded guilty to them). Those admissions undercut any claim that *Ruan* turned the tables on his guilty plea. *See United States v. Kim*, 71 F.4th 155, 164 (4th Cir. 2023) (rejecting a similar challenge because the defendant "did not plead guilty to generic charges" but to the counts showing he "intended" to act in an unauthorized manner); *United States v. Berkowitz*, No. 22-1967, 2023 WL 2064510, at \*3 (3d Cir. Feb. 17, 2023) (evidence established that defendant "knowingly" violated the Controlled Substances Act). On this record, the district court did not exceed its discretion when it denied Escobar's attempt to undo the plea agreement by walking back an extensive series of factual admissions that continue to show he violated the statute.

We affirm.