**Darrell R. EWING, Petitioner–Appellant,**

**v.**

**UNITED STATES of America, Respondent–Appellee.**

No. 14–1869

United States Court of Appeals, Sixth Circuit.

FILED June 07, 2016

Darrell Rashard Ewing, Pro Se.

Mark J. Chasteen, Assistant U.S. Attorney, Office of the U.S. Attorney, Detroit, MI, for Respondent–Appellee.

Before: ROGERS and WHITE, Circuit Judges; HOOD, District Judge.*

HOOD, District Judge.

Ewing was charged with conspiracy to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846. On November 5, 2012, Ewing pled guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and subsequently was sentenced to 180 months' imprisonment. Ewing appealed his conviction, but the appeal was dismissed based on the appellate-waiver provision in Ewing's plea agreement. He then filed a petition pursuant to 28 U.S.C. § 2255 in the district court, arguing that he was denied effective assistance of counsel because his attorney gave him erroneous advice concerning the length of his potential sentence and his ability to obtain credit for time held in federal custody. He also argued that he was denied due process and equal protection based on the government's alleged breach of an oral promise made in connection with the plea agreement. The district court denied Ewing's petition, but granted a certificate of appealability as to its decision to deny Ewing's request for an evidentiary hearing on these claims.

I.

On November 5, 2012, Ewing, represented by Attorney Marlon Evans, appeared before U.S. District Court in the Eastern District of Michigan and pled guilty to controlled-substance conspiracy. Although the presentence investigation report had not been completed, the parties agreed

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

that the prospective U.S. Sentencing Guidelines range was 168 to 210 months, but that Ewing should be sentenced within the lower range of 144 to 204 months of imprisonment. The Court asked Ewing whether any other agreements existed that had persuaded him to plead guilty, to which Ewing responded, "no."

Ewing was sentenced on January 28, 2013. Evans began on behalf of Ewing by stating: "There was a sentencing agreement between the parties ... [W]e would hope that the [c]ourt respect that agreement of a sentencing guideline range[1] between 144 [and] 204." Evans went on to state that, although the prosecutor did not include it in the plea agreement, the prosecutor was "not in disagreement" with a sentence of 144 months. The prosecutor responded that the government had agreed only to the range as stated in the plea agreement and that, subsequent to Ewing's guilty plea, a presentence investigation had uncovered additional criminal history raising Ewing's Guidelines calculation to 210–240 months. The prosecutor went on to recommend a sentence of 180 months.

There was also some discussion of whether Ewing's sentence should be concurrent or consecutive to the life sentence he was serving for a state murder conviction, which he was appealing at the time. Specifically, the prosecutor initially stated that there had not been much discussion about whether the sentence would be concurrent or consecutive. Evans then produced a letter wherein the prosecutor had stated that the government would agree to Ewing serving his federal sentence concurrently with the state murder sentence. The prosecutor replied that the agreement with

respect to a concurrently served sentence was not in the plea agreement and not binding on the court, but that the government would not object to a concurrent sentence.

Again arguing for a sentence of 144 months, Evans stated, "because [Ewing] believed there would be no objection to the low end of the guidelines, we would hope that the [c]ourt give him that low end of the guideline concurrent [sic]." The prosecutor responded:

> I just don't believe I ever said that I would—we negotiated what the range would be. I said that Mr. Evans would be free to advocate for the low end of the guidelines[2] and I'm highly confident that I said that I would have to wait to see what the presentence investigation report would be. I mean, if I committed to something, I would have put it in writing. If they have something in writing saying I committed to the low ends of the guidelines, then I would stand on what I said to Mr. Ewing in writing or on the record. But I don't believe I ever committed to the low end of the guidelines. I know Mr. Evans negotiated hard for that lower range and Mr. Ewing wanted an opportunity to argue for that and that's what he's doing here today, but I don't believe that I ever agreed to 12 years.... [I]f I said that, it's just a failure of memory on my part. If Mr. Evans has a transcript or a letter or something, I will stand by that recommendation. But I don't have that recollection at all.

Evans reported that Ewing informed him that the agreement for 144 months was something Ewing overheard between Ev-

---

1.  Evans's references to the "guideline range" or "guidelines" quoted in this opinion are actually referring to the agreed-upon sentencing range rather than the USSG range.

2.  The prosecutor's references to the "guidelines" here are referring to the agreed-upon sentencing range rather than the USSG range.

ans and the prosecutor in court during plea negotiations the day before Ewing was to go to trial. The prosecutor remembered discussions he had with Evans while Ewing was in the courtroom during which Evans "push[ed] hard" to get the government to agree to 144 months, but the prosecutor believed that he agreed to the range only, as he wanted to see the pre-sentence report before agreeing to a specific sentence. At the conclusion of the discussion, the court admonished the parties that, regardless of the government's recommendation, it would not be binding on the court as Ewing's 11(c)(1)(C) guilty plea included a range of 144 to 204 months.

Near the conclusion of the sentencing hearing, Ewing stated that if he was not going to receive a sentence of 144 months, he wanted to withdraw his guilty plea. The court accepted Ewing's belief that he understood the prosecutor to say he would recommend a sentence of 144 months, but reiterated that the prosecutor's recommendation was not binding on the court. The court denied Ewing's request to withdraw his guilty plea and sentenced him to a term of 180 months' imprisonment to run concurrent with his state sentence.

Prior to his indictment in this matter, Ewing was convicted of murder and other crimes in Michigan state court. As a consequence, he has been serving a life sentence in the Michigan Department of Corrections since 2010. During the prosecution of his federal drug conspiracy case, it was necessary to bring him into federal custody, and he was held for a period of time totaling approximately ten months. During Ewing's sentencing hearing, the court pointed out that, although he was in federal custody for those ten months, he was serving his state sentence and was receiving credit toward the state sentence. Evans responded, "But also, Your Honor, he should be getting credit for the federal [sentence] because he's in federal custody." The court advised that this was impossible because prisoners do not get "double credit" toward their sentences.

Ewing's plea agreement contained a waiver-of-appeal provision, waiving any right to appeal his conviction. He also waived any right to appeal his sentence, as long as the sentence did not exceed 204 months. Regardless, Ewing appealed, arguing that the appellate-waiver provision was invalid, that the motion to withdraw his guilty plea was improperly overruled, and that his sentence was substantively unreasonable. We dismissed Ewing's appeal because he had knowingly and voluntarily waived his right to appeal under the terms of the plea agreement. *United States v. Ewing*, No. 13–1157 (6th Cir. Nov. 26, 2013).

On March 24, 2014, Ewing filed a habeas corpus petition pursuant to 28 U.S.C. § 2255, alleging that he was deprived of effective assistance of counsel because Evans encouraged him to plead guilty under the erroneous advice that he would receive a sentence of 144 months of imprisonment. He also argued that Evans was constitutionally ineffective for encouraging him to plead guilty under the erroneous advice that he would receive custody credit for the ten months he spent in federal custody while this matter was pending in the trial court. Finally, he argued that he was denied his rights to equal protection and due process because the United States breached its promises under the plea agreement. He sought specific performance under the plea agreement or, at a minimum, an evidentiary hearing to establish the factual predicates of his constitutional claims. In support of his § 2255 petition, Ewing attached the affidavits of himself, his mother, and his sister. Ewing's mother and sister claimed that Evans told them, in the courtroom on November 5, 2012, that Ew-

ing would be sentenced to 144 months in prison and that he would receive credit for the time he spent in federal custody. In his own affidavit, Ewing asserted, "I was lured into pleading guilty with erroneous information given to me by [Evans], in that, he misinformed me that the prosecutor had agreed to a 144–month recommendation, ran [sic] concurrent, with credited time for being in federal custody." On June 26, 2014, the district court denied Ewing's petition in its entirety, but granted a certificate of appealability with respect to its decision to deny an evidentiary hearing on Ewing's claims.

## II.

A prisoner who moves to vacate his sentence under § 2255 must demonstrate that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In considering a petition under § 2255, the district court is required to grant an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b). The petitioner's burden for obtaining a hearing is relatively light. *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). No hearing is required, however, where the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Where the judge considering the § 2255 petition also conducted the proceedings below, the judge may rely on his or her recollections of those proceedings. *See id.*

To demonstrate ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* When a petitioner's ineffective-assistance claim involves the decision whether to plead guilty, to establish prejudice, the petitioner must show a "reasonable probability" that counsel's constitutionally ineffective performance affected the outcome of the plea process. *Smith*, 348 F.3d at 551 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

## III.

■ Ewing first claims that the government breached an oral promise to recommend a prison sentence of 144 months. Absent extraordinary circumstances, a defendant is bound by his statements during a plea colloquy when the district court has scrupulously followed the procedures for taking the defendant's guilty plea. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). During the plea hearing, the court recited Ewing's potential sentencing range of 144 to 204 months and asked whether that was Ewing's understanding of the agreement, to which Ewing responded affirmatively. The court then asked Ewing twice whether any other agreements existed in relation to his guilty plea and Ewing responded, "No." A trial judge cannot properly administer a plea agreement if it consists of "secret terms known only to the parties." *Id.* A plea bargain is contractual

in nature and subject to contract-law standards. *Id.* Accordingly, Ewing is foreclosed from relying on an alleged oral promise by the government to recommend a sentence of 144 months. *See id.* at 88–90 (defendant precluded from arguing government promised to take no stance at sentencing where defendant failed to inform the court of the promise during plea colloquy). Further, the district court made clear that although it accepted that Ewing believed the prosecutor had agreed to recommend 144 months, any such recommendation would not have been binding on the court in any event. In other words, as the plea colloquy made clear, the district court was free to impose any sentence within the agreed-upon range.

Ewing seeks to circumvent *Baker* by arguing that a letter from the government agreeing to a concurrent sentence, which predates the plea agreement, shows that the integration clause contained in the plea agreement is false because the plea agreement did not address whether Ewing's sentence would be concurrent. But this does not overcome the hurdle that whether or not the government agreed to *recommend* 144 months, Ewing was never promised a 144–month sentence.

■ Ewing contends that Evans provided constitutionally ineffective assistance because Evans assured him he would receive a 144–month sentence. In *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999), however, we concluded that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy." Accordingly, the trial court's proper plea colloquy cured any misunderstanding Ewing may have had about the consequences of his plea. *See Ramos*,

170 F.3d at 565 (the trial court's "clear and thorough plea allocution" apprising the defendant of the "actual sentencing possibilities" prevented the defendant from showing actual prejudice under *Strickland* (quoting *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992))). During the plea hearing, Ewing confirmed that he had reviewed the plea agreement with Evans, that he understood the agreement's provisions, and that the plea was voluntary. The record also reflects that he was fully aware that no particular sentence was being promised when he entered the guilty plea and that the district judge, and no one else, would determine the final sentence.

Because, under *Ramos*, 170 F.3d at 565, Ewing is unable to show actual prejudice, his first ineffective-assistance claim is foreclosed and the district court did not abuse its discretion in denying an evidentiary hearing.

■ Ewing's second ineffective-assistance argument is that Evans erroneously advised him that he would receive custody credit on his federal sentence for the ten months spent in federal custody while he was in primary state custody on a Michigan murder conviction. This issue was not raised during Ewing's plea hearing, nor was it mentioned in the plea agreement. During Ewing's sentencing hearing, the court corrected what, indeed, seemed to be Evans's belief that Ewing would receive credit on his federal sentence for the time spent in federal custody. Ewing later asked to withdraw his guilty plea if the court was going to give him a sentence greater than 144 months, but did not ask to withdraw his plea based on the lack of custody credit.

Along with his § 2255 petition, Ewing provided affidavits from himself, his mother, and his sister, stating that Evans told them Ewing would receive credit for the time spent in federal custody. Ewing and

his mother both stated that the assurances of a 144–month sentence and custody credit were the only reasons that Ewing decided to plead guilty rather than going to trial as he had previously insisted. In denying Ewing's custody-credit claim below, the district court noted that Ewing did not make reference to the alleged advice regarding custody credit at sentencing and did not raise the issue on appeal. The court also noted that the plea agreement contained no reference to custody credit and that jail-time calculations are within the province of the Bureau of Prisons, not the court.

Although a § 2255 petitioner's burden for establishing entitlement to a hearing is relatively light, *Smith*, 348 F.3d at 551, no hearing is required if the petitioner's allegations are inherently incredible, *Arredondo*, 178 F.3d at 782. To succeed on his § 2255 claim, Ewing would have to show that there is a reasonable probability that the erroneous advice regarding custody credit affected his decision to plead guilty. *See Smith*, 348 F.3d at 551. Ewing argues that an evidentiary hearing is necessary to flesh out the answer to this inquiry. But several factors indicate that the custody-credit issue did not impact Ewing's decision to plead guilty and, therefore, any erroneous advice by Evans on the subject could not have resulted in actual prejudice under *Strickland*. First, while Evans brought up the subject briefly during the sentencing hearing, Ewing himself did not. Ewing spoke quite extensively during the hearing—even voicing his desire to withdraw his guilty plea based on the possible length of his sentence—but did not seek to withdraw based on the lack of custody credit. Further, as the district court noted, he did not raise the issue in his direct appeal, and instead argued that he "entered into this plea agreement on the sole basis and belief that the United States would recommend 144 months of imprison-

ment at the sentencing hearing." Additionally, ten months of custody credit is not likely to be a deciding factor with respect to a plea agreement for 144 to 204 months' imprisonment, particularly considering that Ewing was already serving a life sentence. Ewing has alleged no special circumstances indicating that he might have placed particular emphasis on custody credit in deciding whether or not to plead guilty. *See Hill*, 474 U.S. at 60, 106 S.Ct. 366. Although we are sympathetic to Ewing's argument, in light of the evidence of record, we cannot say that the district court abused its discretion in denying an evidentiary hearing.

### IV.

Accordingly, we **AFFIRM** the judgment of the district court; its refusal to conduct an evidentiary hearing was not an abuse of discretion.