RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

*v.*

CHARLES CARSON,

        *Defendant-Appellant*.

No. 21-3780

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:18-cr-00204-2—Michael H. Watson, District Judge.

Decided and Filed:  April 27, 2022

Before:  BATCHEDLER, COLE, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Frederick D. Benton, Jr., FREDERICK D. BENTON, JR. L.P.A., Columbus, Ohio, for Appellant.  Kimberly Robinson, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge.  Charles Carson pled guilty to engaging in a racketeering conspiracy.  In this direct appeal, he argues that his attorney provided ineffective assistance of counsel prior to his guilty plea and that the district court abused its discretion by denying his motion to withdraw his guilty plea.  We analyze the merits of the ineffective assistance of counsel claim because the factual record is sufficiently developed, reject Carson's

ineffective assistance of counsel claims, and affirm the district court's denial of Carson's motion to withdraw his guilty plea.

**I**

Carson was indicted for engaging in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and for murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). Carson and his eighteen codefendants were members of the Trevitt and Atcheson Crips, a criminal organization that engaged in murder, attempted murder, drug trafficking, firearms trafficking, witness tampering, robbery, assault, and other crimes in the Columbus, Ohio area. The district court appointed Kristin Burkett and Andrew Sanderson to represent Carson.

In February 2019, Carson signed a plea agreement in which he agreed to plead guilty to Count I, racketeering conspiracy. Carson and the United States also agreed to a 360-month prison term pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). At the time, Carson was serving a seven-year sentence on a 2015 state conviction for aggravated robbery, and the plea agreement specified that the sentence in this case would run concurrent to the state sentence. On January 3, 2020, after Carson signed the plea agreement but before his change of plea hearing, the government filed a Notice of Intent to Not Seek the Death Penalty. Between the notice's filing and Carson's plea hearing, Sanderson met with Carson and discussed the notice twice.

At Carson's change of plea hearing, the magistrate judge conducted an inquiry into Carson's understanding of the plea and its consequences. Carson agreed that he understood the conspiracy charge was punishable by a term of life imprisonment, and he confirmed that he "understood every term of the plea agreement," that he "agree[d] with the terms of the plea agreement," and that no one "made any other or different promises or assurances of any kind to persuade [him] to plead guilty." DE 561, Plea Tr., Page ID 1967–68, 1981. The magistrate judge found Carson to be "fully competent and capable of entering an informed plea" and found his plea to be knowing and voluntary. *Id*. at 1983. Carson did not object to the magistrate judge's findings or conclusions. After Carson pled guilty on February 12, 2020, the district court adopted the magistrate judge's report and recommendation and accepted the plea.

Carson filed a pro se motion to withdraw his plea on August 5, 2020, arguing that he "entered a plea of guilty before [he] fully understood what [he] was actually saying [he] was guilty of," and that he entered the plea because he thought he would otherwise receive the death penalty. DE 557, Mot., Page ID 1938. His counsel filed a formal motion to withdraw the plea a week later. The district court held a conference on the motion, denied it, and reset the matter for sentencing.

Eight days before Carson's rescheduled sentencing, he mailed a letter to the district court, again attempting to withdraw his guilty plea and asserting an ineffective assistance of counsel argument for the first time. During the rescheduled sentencing hearing, on October 28, 2020, the district court heard further argument from Carson, his counsel, and the government regarding Carson's desire to remove counsel and withdraw his guilty plea. At this hearing, Sanderson stated that before Carson pled guilty, "he likely advised" Carson that he would only serve seventeen years in prison. *United States v. Carson*, No. 2:18-cr-204(2), 2021 WL 2581300, at *3 (S.D. Ohio June 23, 2021) (noting that Sanderson was not speaking under oath). The district court reiterated its previous denial of Carson's motion to withdraw his guilty plea and relieved counsel. The district court appointed new counsel and rescheduled the case for sentencing.

At the second rescheduled sentencing hearing, on March 4, 2021, the district court again heard arguments regarding Carson's motion to withdraw his plea. As the district court began to grant Carson's motion, the government requested an evidentiary hearing. *Id*. at *4 (explaining that the district court was discussing the confusion in the record about what Carson understood when he pled guilty such that withdrawal was warranted when the government requested an evidentiary hearing). On April 13, 2021, the district court held an evidentiary hearing to determine whether Sanderson advised Carson that the plea agreement would result in Carson's serving only seventeen years and whether this misunderstanding was a basis of his decision to plead guilty.

At the evidentiary hearing, Carson testified consistently with his prior statements that Sanderson told him pleading guilty would result in an actual sentence of only seventeen years and he pled guilty based on that understanding. Sanderson testified that, despite the representations he made at the October hearing, his notes did not reflect ever discussing good-

time credit with Carson. Additionally, Sanderson disavowed that the seventeen years calculation arose during discussions with Carson about credit for time served. Sanderson also testified that during all his discussions with Carson about withdrawing his guilty plea, Carson never mentioned a misunderstanding about thirty years versus seventeen years as a basis for wanting to withdraw his plea.

After the evidentiary hearing, the district court determined Carson was not "operating under a misunderstanding when he entered into his plea." *Carson*, 2021 WL 2581300, at *5. Despite the "muddy" record regarding what exactly Sanderson told Carson as to the amount of actual time to be served, the district court found Carson's argument "particularly undercut" by Sanderson's notes not mentioning the possibility of serving only seventeen years and Carson's failure to raise any misunderstanding about the alleged discrepancy with his counsel before the October hearing. *Id*. at *6. The district court further found that Sanderson had told Carson that the government was not seeking the death penalty prior to Carson's entering the guilty plea. The district court therefore concluded the circumstances surrounding Carson's plea continued to weigh against withdrawal.

The district court imposed a 360-month term of imprisonment to run concurrent to the undischarged portion of Carson's state term. Carson appeals the district court's final judgment and its opinion and order declining to reconsider his second motion to withdraw his guilty plea.

**II**

Carson's direct appeal asserts ineffective assistance of counsel and challenges the district court's denial of his motion to withdraw his guilty plea. He argues that Sanderson, his counsel at the plea stage, was ineffective because Sanderson allegedly told him the thirty-year sentence would result in an actual sentence of seventeen years and because Sanderson allegedly told him he would face the death penalty if he did not plead guilty. We address the merits of Carson's ineffective assistance of counsel claims because the factual record is sufficiently developed, reject Carson's length-of-incarceration argument because he cannot demonstrate deficient performance or prejudice, and reject Carson's death penalty argument because he cannot show deficient performance. Carson also challenges the district court's initial denial and declination to

reconsider its denial of his motion to withdraw his guilty plea.  Because the district court did not abuse its discretion in refusing to allow Carson to withdraw his guilty plea, we affirm.

**A**

Claims of ineffective assistance of counsel are ordinarily not addressed on direct appeal because "the record is usually insufficient to permit an adequate review." *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005) (holding alleged ineffectiveness of counsel was not apparent because the record "contain[ed] no evidence regarding what advice, if any, . . . counsel provided").  But "[a]n exception to this principle exists for cases in which the record is adequately developed to allow the court to properly assess the merits of the issue." *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999).  The record may be adequate for review on direct appeal when the district court held an evidentiary hearing on a motion to withdraw a guilty plea at which both parties presented evidence on the ineffective assistance of counsel claim at issue on appeal.  *United States v. Wynn*, 663 F.3d 847, 850–51 (6th Cir. 2011).  Ineffective assistance of counsel claims are mixed questions of law and fact that we review de novo.  *Fortson*, 194 F.3d at 736.

Both Carson and the government agree that the record is sufficiently developed to allow proper consideration of Carson's ineffective assistance claims.  The district court held an evidentiary hearing in April 2021 related to Carson's renewed motion to withdraw his guilty plea due to ineffective assistance of counsel, at which time both parties presented evidence on all ineffective assistance of counsel claims at issue on appeal.  At this hearing, the district court heard testimony from Carson and Sanderson on Carson's claims that Sanderson told him that "a 30-year sentence [would] result in an actual period of incarceration for 17 years" and that he would "face a potential death sentence . . . if he did not plead."  CA6 R. 15, Appellant Br., at 14, 21; DE 619, Hr'g Tr., Page ID 2511–12.  Further factual development is unnecessary to our review, so we analyze the merits of the claim.  *See Wynn*, 663 F.3d at 850–51; *Fortson*, 194 F.3d at 736.

**B**

Ineffective assistance of counsel requires a two-part showing: (1) that counsel's performance was "deficient"; and (2) that this deficient performance "prejudiced the defense."

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is measured "against an objective standard of reasonableness, under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (cleaned up). Establishing *Strickland* prejudice in the guilty-plea context requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Wynn*, 663 F.3d at 851. Reviewing these claims de novo, we reject Carson's ineffective assistance of counsel argument because he cannot show deficient performance or prejudice as to his length of incarceration argument and he cannot show deficient performance as to his death penalty argument.

**1**

Carson argues his decision to plead guilty was "based upon his counsel's representation that a 30-year sentence will result in an actual period of incarceration for 17 years." CA6 R. 15, Appellant Br., at 14. But Carson cannot demonstrate deficient performance from the existing record. The district court heard testimony from both Carson and Sanderson and found it was "unclear what counsel advised regarding the length of sentence." *Carson*, 2021 WL 2581300, at *6 ("It would be an understatement to say the record is muddy with respect to whether [Sanderson] advised [Carson], prior to pleading guilty, that a plea agreement with a stipulated sentence of thirty years' imprisonment would amount, in the real world, to a sentence of seventeen and a half years."). Carson claimed that Sanderson predicted he would only serve seventeen years. Sanderson testified repeatedly that he never guaranteed a particular period of incarceration, that he thought twenty-three years was the best possible result, and that he did not make any promises regarding good-time credits. We find Carson cannot demonstrate deficient performance.

Even if Carson could prove counsel's performance was deficient, Carson was not prejudiced because the magistrate judge's thorough plea colloquy precludes a finding of prejudice. When an attorney erroneously promises a certain sentencing outcome, a defendant cannot show prejudice if he was accurately advised during the plea colloquy. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (rejecting defendant's argument that he was prejudiced by attorney's false promise regarding probation if he pled guilty and holding that defendant must be

bound to the answers he provided during the plea colloquy); *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (holding that "the trial court's proper plea colloquy cured any misunderstanding [the defendant] may have had about the consequences of his plea"). At the plea hearing, the magistrate judge advised Carson that "the plea agreement calls for a term of imprisonment of 360 months" and that it would be "served concurrently with the current remaining term of the sentence which you are currently serving." DE 561, Plea Tr., Page ID 1962. Carson confirmed that he "understood every term of the plea agreement," that he "agree[d] with the terms of the plea agreement," and that no one "made any other or different promises or assurances of any kind to persuade [him] to plead guilty." *Id.* at 1981. The record reflects Carson "was fully aware that no particular sentence was being promised when he entered the guilty plea and that the district judge, and no one else, would determine the final sentence." *Ewing*, 651 F. App'x at 410.

On appeal, Carson argues that our previous decision in *Ramos* is distinguishable: the judge in *Ramos* warned the defendant he would not receive probation, but the magistrate judge did not tell Carson anything "to negate or 'cure' the misrepresentation provided by his counsel." CA6 R. 15, Appellant Br., at 18–19. But *Ramos* does not require the court to anticipate and negate defendants' beliefs about the sentence. Instead, *Ramos* requires that defendants be held to their plea agreements so long as the court "scrupulously follow[s] the required procedure." 170 F.3d at 566 (citation omitted). Here, the magistrate judge conducted a "proper, clear, and thorough plea colloquy," *id.* at 565, in which Carson was accurately advised about the length of his agreed sentence and that it would "be served concurrently with the current remaining term" of his state conviction, DE 561, Plea Tr., Page ID 1962. Therefore, Carson cannot demonstrate he was prejudiced by his attorney's advice regarding the likely length of incarceration.

**2**

Carson argues his decision to plead guilty was based on his counsel's statement that "he would face a potential death sentence . . . if he did not plead." CA6 R. 15, Appellant Br., at 21. The government filed its notice of intent not to seek the death penalty on January 3, 2020, and Carson pled guilty on February 12, 2020. At the evidentiary hearing, Sanderson testified that, in the interim, he met with Carson twice and told him the government was not seeking the death

penalty. The district court found Sanderson credible and concluded that Carson "was not under a misunderstanding about the death penalty when he pleaded guilty." *Carson*, 2021 WL 2581300, at *6. Based on the timing of the filings, the evidentiary hearing testimony, and the district court's findings, Carson cannot demonstrate his attorney's performance was deficient regarding the death penalty.

## C

Carson challenges the district court's denial of his second motion to withdraw his plea. We review a district court's denial of a defendant's motion to withdraw a plea for abuse of discretion. *United States v. Goddard*, 638 F.3d 490, 493 (6th Cir. 2011). "A district court abuses its discretion when it 'relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard.'" *Id*. (citation omitted). Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw his plea before sentencing if he demonstrates "a fair and just reason for withdrawal." Factors to consider in determining whether the defendant has set forth a fair and just reason include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Goddard*, 638 F.3d at 494 (citation omitted). We find that the district court acted within its discretion because each of the seven *Goddard* factors weighs against withdrawal.

*Factor 1*. The district court did not abuse its discretion in finding the amount of time between the plea and the motion to withdraw it weighed against withdrawal. Rule 11(d) allows for a "hastily entered plea made with unsure heart and confused mind to be undone," but it does not permit a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (citation omitted). Our court has "not fashioned a precise cut-off point beyond which delay is unreasonable." *United States v. Carpenter*, 554 F.

App'x 477, 481 (6th Cir. 2014). But we have "affirmed decisions denying the withdrawal of a guilty plea after delays as short as one or two months." *Id*. (citing *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (75 days); *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (77 days); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (67 days); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (35 days)).

Here, the district court accepted Carson's plea on February 28, 2020. Carson told his attorney he wished to withdraw his plea on April 27, 2020, at which point counsel attempted to dissuade Carson from withdrawing his guilty plea before filing a motion to withdraw on August 5, 2020. At best, almost two months passed between the district court's acceptance of Carson's guilty plea and his making counsel aware of his intent to withdraw. The district court was well within its discretion in weighing a fifty-nine-day delay against Carson.

*Factor 2*. The district court did not abuse its discretion in finding Carson lacked a valid reason for failing to move earlier in the proceedings. On appeal, Carson argues that this factor is supported by his former counsel's misleading him as to the amount of time he would actually serve and the risk of the death penalty. It is clear from the record that the government's notice of intent not to seek the death penalty was well-known before Carson's plea agreement was filed and before he pled guilty in court. Likewise, Carson's beliefs about the actual amount of time he would serve cannot justify the delay because the plea colloquy demonstrates he understood the agreed-to sentence at the time of his plea. Moreover, he did not raise this argument until his second motion to withdraw in October 2020, long after he pled guilty in court. The district court acted within its discretion in weighing factor two against Carson.

*Factor 3*. The district court did not abuse its discretion in finding that the third factor, assertion and maintenance of innocence, weighed against granting Carson's motion. "A defendant's 'vigorous and repeated protestations of innocence' may support the decision to allow withdrawal of a guilty plea." *Carpenter*, 554 F. App'x at 482 (quoting *Baez*, 87 F.3d at 809). But Carson made a knowing and voluntary guilty plea before the magistrate judge. He specifically acknowledged as true the plea agreement's statement of facts, which admit his involvement in attempted murders, a murder, and an armed robbery. *See id*. (noting that "claims of innocence are not convincing when the defendant has vacillated over time"). Such a belated

contention supports the district court's exercise of its discretion in weighing factor three against Carson.

*Factor 4*.  The district court did not abuse its discretion in finding that the circumstances of Carson's pleading guilty do not favor withdrawal.  The district court concluded the plea was knowingly and voluntarily entered.  As discussed above, we conclude—like the district court— that regardless of what counsel advised, "[t]he specificity of the sentence contained in the plea agreement itself, the statements made during the plea hearing, and [Carson's] attestation that he understood the same" preclude his assertions that he pled guilty based on a misunderstanding. *Carson*, 2021 WL 2581300, at \*7.  Therefore, the district court did not abuse its discretion in finding this factor weighed in favor of denying Carson's motion.

*Factors 5 and 6*.  The district court did not abuse its discretion in concluding that Carson's nature and background and prior experience with the criminal justice system weighed against withdrawal.  On appeal, Carson argues his "development and mental composition" was affected by his upbringing "under very harsh conditions," without a stable family environment or positive role models, and his turning to illicit substances to cope with his brother's suicide and the violence around him.  CA6 R. 15, Appellant Br., at 31–32.  Although these factors undoubtedly negatively affected Carson, he does not claim his background impaired his ability to understand the proceedings.  He completed high school and previously pled guilty to a state aggravated robbery with a firearm specification charge, which indicates a general understanding of the criminal justice system and plea bargaining.  *See Goddard*, 638 F.3d at 495 (finding factors five and six weigh against withdrawal when defendant "understood the consequences of his actions" and had "sufficient contact with the criminal justice system to fully understand his rights and the process").  The district court did not abuse its discretion by finding Carson had the mental capacity to understand the charges against him and the consequences of his decision to plead guilty.

*Factor 7*.  Finally, the district court did not abuse its discretion in finding the government would be prejudiced if Carson were allowed to withdraw.  Carson pled guilty to a racketeering conspiracy whose activities spanned eight years and included eight murders and numerous attempted murders.  The government "had been strategizing and preparing for trial for months,

focused only on evidence relating to the remaining co-defendant, and might have to start trial preparation over with a lens toward evidence relating to [Carson] should he go to trial." *Carson*, 2021 WL 2581300, at *2. As the district court further noted, the government "might be hampered in its ability to bring back for testimony" the already-sentenced codefendants. *Id*. Concluding the government's possible prejudice weighed against Carson's motion was not an abuse of discretion.

Because the district court did not abuse its discretion in its analysis and application of the *Goddard* factors to Carson's renewed motion to withdraw his guilty plea, we affirm the district court's denial of Carson's motion to withdraw his plea.

### III

We reject Carson's ineffective assistance of counsel claims on the merits and affirm the district court's denial of his motion to withdraw his plea.