NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0017n.06

Case No. 23-1341

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 12, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| ANTHONY DELANE HUDSON II, | ) | |
| Defendant-Appellant. | ) | |
| | ) | **O P I N I O N** |
| | ) | |

Before: McKEAGUE, LARSEN, and MURPHY, Circuit Judges.

**McKEAGUE, Circuit Judge.** Anthony Hudson II pleaded guilty to a drug offense requiring a minimum sentence of ten years in prison. Before the district court sentenced Hudson, charging policies for federal prosecutors changed in Hudson's favor. Consistent with those policies, Hudson and the United States jointly moved to allow Hudson to withdraw his guilty plea and plead to a lesser offense—one lacking a mandatory minimum. The district court, however, did not think withdrawal was appropriate and sentenced Hudson on his original charge. We **AFFIRM**.

## I. BACKGROUND

### A.

On eight occasions between August 2021 and November 2021, Hudson sold drugs to undercover officers. Some sales involved methamphetamine. Some involved fentanyl.

And others, like the one on November 16, 2021, involved both drugs. That day, Hudson—while on parole for a different conviction—sold 56.2 grams of methamphetamine and 5.91 grams of fentanyl.

Several search warrants followed. Law enforcement began with some residences. At Hudson's girlfriend's house, where Hudson was staying, law enforcement found a gun, ammunition, and over $2,500 in cash. At his mother's house, they found another gun, a loaded magazine, sandwich bags, a digital scale, a cup coated in methamphetamine, and $1,300 in cash in the basement. They also found a safe with over $10,000 in cash. A few weeks later, law enforcement searched three of Hudson's phones, which revealed text messages between him and others suggesting drug trafficking.

**B.**

In August 2022, Hudson's criminal prosecution came to a head. Hudson was arrested that month on a criminal complaint for drug distribution. And by the end of the month, he and the United States entered into a plea agreement. Hudson agreed to plead guilty to a felony information charging him with distributing "50 grams or more of methamphetamine and a mixture or substance containing a detectable amount of fentanyl." Initial Plea Agreement, R.17 at PageID 36–37. Hudson pleaded guilty before a magistrate judge on August 29, 2022. The district court accepted his plea roughly two weeks later.

All that remained was sentencing. The district court had several options. It could sentence Hudson to, at most, life in prison and a life term of supervised release. But one thing the court *had* to do, given the mandatory minimum for the offense charged, was sentence Hudson to at least ten years in prison and five years of supervised release.

The district court initially scheduled sentencing for December 19, 2022. But that hearing was later delayed so that Hudson could receive a neuropsychological test. Several significant developments occurred in the interim.

## C.

*New Charging Policies.* On December 16, 2022, the Attorney General issued two policy memoranda: one that applies to all offenses and another that applies specifically to drug offenses. Merrick Garland, *General Department Policies Regarding Charging, Pleas, and Sentencing* (December 16, 2022), https://perma.cc/R2J8-4JZD; Merrick Garland, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases* (December 16, 2022), https://perma.cc/XU7X-M7LQ. The memoranda address, among other things, the "proliferation of provisions carrying mandatory minimum sentences." *General Department Policies*, *supra*, at 3; *see also Additional Department Policies*, *supra*, at 1, 2. But they do so in different ways. The drug offense memorandum sets forth four criteria. Where all four are met, it instructs prosecutors to decline to charge drug quantities that trigger a mandatory minimum sentence of imprisonment. Meanwhile, the general memorandum requires prosecutors to balance considerations like the sentencing factors provided in 18 U.S.C. § 3553(a) before making charging decisions.

The memoranda's policies apply both to future prosecutions and to some currently pending. Notably, the policies apply where charges have already been brought, but a district court has not yet imposed a sentence. In such situations, prosecutors are "encouraged" to "take steps to render the charging document, any plea agreement, and the sentence consistent with th[e] policies." *General Department Policies*, *supra*, at 6.

*Motion to Withdraw Guilty Plea.* In light of the new charging policies, the United States reviewed Hudson's case. The government no longer believed a charge carrying a mandatory

sentence was appropriate. It instead preferred to charge Hudson with distribution of an unspecified quantity of methamphetamine and fentanyl. That charge would reduce Hudson's minimum term of supervised release to three years, eliminate mandatory time in prison, and change the maximum penalty to twenty years in prison.

The United States took steps to change Hudson's charge. It filed a superseding felony information and penalty sheet. It also executed a new plea agreement with Hudson based on the superseding information. Now, Hudson and the United States just needed the district court to allow Hudson to withdraw his earlier guilty plea. They formally requested that the court do so in a joint motion on February 15, 2023.

But the motion failed. After ordering and receiving supplemental briefing from the parties, the district court denied their request. Though it conceded the situation was "unusual," the court determined that it did not warrant withdrawal. Order, R.58 at PageID 302. First, most of the factors that apply when analyzing these requests weighed against withdrawal or were "at best neutral." *Id.* at 301. Second, the practical stakes of withdrawal did not warrant the judicial inefficiencies that would follow. *Id.* at 302. After all, the district court suspected that Hudson's guidelines range for either charge would meet or exceed the original charge's mandatory minimum sentence. *Id.*

**D.**

As to Hudson's guidelines range, the district court turned out to be correct. The probation office's final presentence investigation report concluded that Hudson's total offense level was 31 and that he fell under criminal history category III. Together, those parameters yielded a range of 135 to 168 months in prison. Over Hudson's objection, the district court adopted that calculation.

Still, the district court ultimately varied downward. The court considered Hudson's mental health troubles, the potential for artificially inflated drug quantities, and Hudson's pattern of behavior. Having done so, it provided essentially a "one-level reduction" and sentenced Hudson to 121 months in prison—one month above the charge's mandatory minimum. Sentencing Tr., R.66 at PageID 365, 367. Hudson also received five years of supervised release (the minimum), a fine, and a special assessment.

The next day, Hudson appealed. Unlike its approach at the district court, on appeal, the United States did not agree with Hudson's position. It instead contends that we should affirm.

## II. ANALYSIS

Hudson argues that he should have been allowed to withdraw his initial guilty plea. Had he attempted to withdraw his plea *before* the district court accepted it, he would have had an absolute right to do so. *See* Fed. R. Crim. P. 11(d)(1) (specifying that a defendant may withdraw his guilty plea before the court accepts the plea "for any reason or no reason"); *see also United States v. Mendez-Santana*, 645 F.3d 822, 827 (6th Cir. 2011). But Hudson and the United States made their joint request *after* the district court accepted Hudson's plea. At that point, the dynamic changed. Hudson now had to present a "fair and just reason" for withdrawal. Fed. R. Crim. P. 11(d)(2)(B); *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).

The district court determined that Hudson didn't carry his burden. We review that holding for an abuse of discretion. *United States v. Carson*, 32 F.4th 615, 623 (6th Cir. 2022). Under that standard, we reverse only where a court "relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." *Id.* (citation omitted).

**A.**

Though Federal Rule of Criminal Procedure 11 requires defendants to show a "fair and just reason" for withdrawal, it does not define what that means. *See* Fed. R. Crim. P. 11(d)(2)(B); *see also United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987). Still, the rule's aim is clear. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). It seeks to separate pleas made "hastily" with an "unsure heart and confused mind" from those made strategically with an eye toward withdrawal if the defendant later believes the plea qualified as a "bad choice." *Id.* Rule 11 covers guilty pleas like the former but not the latter. *See id.*

To help differentiate cases involving a plea entered hastily versus those entered strategically, this Court has set forth seven factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).

None of the factors, standing alone, controls. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). Nor is the list exclusive. *Id.* Each factor's relevance (or the relevance of a factor that is not listed) depends on the circumstances surrounding the original plea and the withdrawal request. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008).

The district court here determined that most of the factors cut against withdrawal or were "at best neutral." Order, R.58 at PageID 301–02. The court also considered the "practical stakes" of allowing Hudson to withdraw his plea. *Id.* at 302. To assess whether the court abused its discretion, we examine each of those considerations in turn.

*1. Time Between Plea and Motion.* A long time passed before Hudson moved to withdraw his plea. Hudson pleaded guilty on August 29, 2022. And the joint motion to withdraw did not come until February 15, 2023—170 days later. Such a significant delay cuts against withdrawal. *Haygood*, 549 F.3d at 1053 (noting that "the factor of time weigh[ed] heavily against" the defendant where 138 days elapsed between the plea and motion to withdraw). Indeed, we have consistently affirmed decisions denying requests to withdraw for much shorter delays, like one or two months. *See Carson*, 32 F.4th at 624 (collecting cases).

*2. Reason for Delay.* Hudson and the United States can explain every day of that delay. Begin with the stretch from August 29 to December 16, 2022. During those 109 days, the updated charging policies—which motivated the joint withdrawal request—were not in effect. So, Hudson had no reason before then to move for withdrawal. That leaves the 61 days from December 16, 2022, to February 15, 2023. The United States used that time to interpret and apply the new policies to the cases impacted. We find these explanations for delay generally persuasive. As a result, this factor favors withdrawal. The district court reached a similar conclusion. *See* Order, R.58 at PageID 302 (determining that this factor "arguably weighs . . . in favor of withdrawal").

*3. Claim of Innocence.* Hudson has never proclaimed his innocence. At his initial arraignment, Hudson waived prosecution by indictment and pleaded guilty to a felony information. He did not change course in the joint motion to withdraw. Indeed, instead of seeking to invalidate his guilty plea and proceed to trial, Hudson merely sought to exchange his guilty plea for another. This factor, too, weighs against Hudson.

*4. Circumstances of Plea.* Nothing in the record suggests that Hudson pleaded guilty with an "unsure heart" or "confused mind." *See Alexander*, 948 F.2d at 1004. As described in the third factor, Hudson pleaded guilty from the outset. And he never wavered. The magistrate judge also

held a thorough Rule 11 hearing, which confirmed that Hudson entered his plea knowingly, voluntarily, and intelligently. All of this further supports denying withdrawal. *See United States v. Giorgio*, 802 F.3d 845, 848–49 (6th Cir. 2015); *United States v. Catchings*, 708 F.3d 710, 718–19 (6th Cir. 2013).

5. *Defendant's Nature and Background.* Hudson's background raises only one potential concern that could favor withdrawal. As a teenager, Hudson suffered a traumatic brain injury after being hit by a car. The district court, however, employed several measures to ensure that Hudson could still understand the proceedings. For example, it delayed sentencing so that Hudson could receive a neuropsychological test. And during the plea hearing, the magistrate judge asked if Hudson, notwithstanding his brain injury, was competent to proceed. Hudson, his counsel, and the United States all confirmed that they thought he was competent. The fact that Hudson earned a certificate in business from a local community college further supports their position. This factor slightly favors denying withdrawal.

6. *Experience with Criminal Justice System.* Hudson has fairly extensive experience with the criminal justice system. He has several adult convictions. True, they all came from state court. But during those experiences, Hudson would still have obtained a "general understanding of the criminal justice system and plea bargaining." *Carson*, 32 F.4th at 625. This factor weighs against Hudson.

7. *Prejudice to Government.* All agree that the United States—which joined Hudson's motion—would not face prejudice if the court let Hudson withdraw his plea. Accordingly, as the district court recognized, this factor "unequivocally weighs in favor of withdrawal." Order, R.58 at PageID 301.

*Practical Stakes.* Though not one of our typical factors, the district court also considered the practical effects of granting the joint motion for withdrawal. On the one hand, the court would have to expend some additional resources. Some delay would also follow. For example, the court would have to hold another plea hearing. And the court would need to wait for a revised presentence investigation report. On the other hand, Hudson would stand to receive two significant benefits. First, his minimum term of supervised release would decrease to three years. Second, Hudson would no longer face mandatory time in prison. Even so, Hudson's guidelines range would remain the same and exceed his initial charge's mandatory minimum. On balance, this consideration weighs slightly against Hudson.

\*     \*     \*

In the end, our analysis generally aligns with the district court's. We both determined that (1) at least five of the seven factors weigh against withdrawal, and (2) irrespective of the motion's outcome, Hudson still faced a Sentencing Guidelines range over 120 months in prison. On this record, the district court did not abuse its discretion in holding that Hudson did not present a fair and just reason for withdrawal.[1] Would we, faced with the same motion on a blank slate, reach a different outcome? Considering the two factors that cut the other way, possibly. But that is not the question before us. And we are hard-pressed to say that the district court abused its discretion when it accurately applied our factors and, relying on most of them, denied relief.

---

[1] Other circuits, considering similar facts, have reached the same conclusion. For one example, look to the First Circuit. In *United States v. Moore*, it held that a defendant did not present a fair and just reason for withdrawal despite a "change in policy within the United States Attorney's Office." 362 F.3d 129, 135 (1st Cir. 2004). For another, consider *United States v. Carrillo-Colorado*. In that case, the Ninth Circuit held that the government's new plea-bargaining policy was not a fair and just reason for withdrawal. *United States v. Carrillo-Colorado*, 56 F.3d 73 (9th Cir. 1995) (unpublished table decision).

**B.**

Hudson argues that the district court abused its discretion for two main reasons. Neither moves the needle in his favor.

**1.**

First, Hudson contends that the district court's analysis of the joint motion's practical stakes was lacking. Specifically, he (correctly) observes that the district court did not discuss the potential decrease of his mandatory term of supervised release. Order, R.58 at PageID 302. But that omission does not warrant reversal. Any one factor's relevance depends on the circumstances of the original plea and withdrawal request. *Haygood*, 549 F.3d at 1052. In this case, the crux of the new charging policies—which motivated the joint motion to withdraw—focused on limiting when prosecutors charge crimes with mandatory minimum *imprisonment* sentences. *See General Department Policies*, *supra*, at 3; *Additional Department Policies*, *supra*, at 1–2. Accordingly, it was reasonable for the district court to focus on that metric.

**2.**

Second, Hudson generally contends that the district court erred by mechanically applying the factors to his case. As he sees things, the joint motion presents a "unique situation." Appellant's Br. 8, 16. So, he requests an "analysis taking those circumstances into consideration." *Id.* at 16. We have two responses.

*a.* Despite Hudson's argument that several of the factors are inapplicable, our caselaw generally instructs district courts to consider all seven. *See Bashara*, 27 F.3d at 1181; *Haygood*, 549 F.3d at 1052. The only exception arises where a defendant fails to establish a fair and just reason for withdrawal under the first six factors. *Alexander*, 948 F.2d at 1004. In that situation, the government need not demonstrate prejudice because the defendant has not carried its burden.

*Id.* True, we have noted that the other factors' specific relevance varies by case. *Haygood*, 549 F.3d at 1052. But we are not aware of any precedent interpreting that rule to mean the factors may become wholly inapplicable. And Hudson does not direct us to any such cases.

In fact, *United States v. Miller*, No. 14-3018, 2015 WL 13927032, at *3 (6th Cir. Apr. 17, 2015) (order), reinforces that district courts should apply all seven factors when presented with a case like Hudson's. In *Miller*, the defendant requested withdrawal "based on the issuance of the Attorney General's memorandum setting forth guidelines for when prosecutors should charge mandatory minimum drug offenses." *Id.* Still, this Court applied all of our primary factors. *Id.* That approach is particularly persuasive as to Hudson's case because he relies on essentially the same basis in his request to withdraw his plea.

*b.* The factors sufficiently cover the circumstances presented by Hudson's case. Consider the details that make his case unique: (1) the United States joined his withdrawal request; (2) the parties' motion asked the court to substitute one guilty plea for another—it did not require the case to proceed to trial; and (3) the request was motivated by a change in charging policies, not simply a change in the defendant's heart.

Our factors address all three circumstances. The fact that the motion was a *joint* request is covered by the seventh factor—prejudice to the government. And it weighs heavily in Hudson's favor. Our factors also account for Hudson's request to substitute guilty pleas, but perhaps not in the way Hudson would hope. That detail underscores that Hudson, under the third factor, has not asserted his innocence.[2] Meanwhile, the second factor—whether the defendant has a valid reason

---

[2] This detail could have influenced the United States' decision to join Hudson's motion. As a result, his request to substitute pleas may also factor into the prejudice (or lack thereof) that the government stood to face. But we omit this point from our analysis because the United States concedes, without explanation, that it would not suffer prejudice.

for failing to move for withdrawal earlier—accounts for the intervening change in charging policies.

The district court, applying the factors, also considered these intricacies. As we did in our analysis, the district court noted that the change in charging policies "arguably weigh[ed]" in Hudson's favor. Order, R.58 at PageID 302. Albeit not explicitly, the court elsewhere weighed the other details by determining that Hudson did not claim innocence and that there was no prejudice to the United States. *Id.* at 301. And more generally, the district court recognized that the case raised "an unusual situation." *Id.* at 302.

\*    \*    \*

For all these reasons, the district court did not abuse its discretion in applying our factors to Hudson's case.

### III. CONCLUSION

The district court didn't abuse its discretion. We **AFFIRM**.