NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0043n.06

No. 24-5020

## UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

FILED
Jan 28, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CARLOS EDWARD THURMAN, JR.,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: SUTTON, Chief Judge; KETHLEDGE and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. Carlos Thurman, Jr., pled guilty to conspiracy to distribute methamphetamine. More than five months later, he moved to withdraw his guilty plea. The district court denied the motion and sentenced him to 210 months' imprisonment. He now says that his lawyers coerced him into pleading guilty, that the court should have allowed him to withdraw the plea, and that the court should not have applied a sentencing enhancement. We reject his arguments and affirm.

I.

From July 2020 to May 2021, the FBI made 20 controlled purchases of methamphetamine from one of Thurman's co-defendants, Mario Renard Baker. FBI agents intercepted Baker's calls and texts, which showed he had coordinated with Thurman and at least four other people to distribute large amounts of methamphetamine. Over several months, Thurman gave Baker about an ounce of methamphetamine per day to distribute. Baker picked up the drugs every day from

Thurman at one of two addresses, at roughly equal frequency—one address on Glen Este Place and another on Bettman Drive.

On June 2, 2021, agents arrested Thurman at the Bettman address, where he was staying with his girlfriend. Agents executed search warrants at both addresses. In the bedroom of the Bettman house, the agents found a loaded revolver, a digital scale, and mail addressed to Thurman bearing the Glen Este address. At Glen Este, agents found a loaded Lorcin pistol, over $20,000 in cash, and more mail addressed to Thurman.

A grand jury later indicted Thurman, Baker, and four other people for conspiracy to distribute methamphetamine. The court appointed counsel to represent Thurman, and Thurman pled not guilty. But in March 2022, Thurman retained private counsel, Matthew Chivari, to replace his court-appointed lawyer.

On January 3, 2023—after a series of postponements—Chivari moved to schedule a change-of-plea hearing on Thurman's behalf. That same day, Thurman wrote a letter to the district court in which he said, "I feel like I'm being force [sic] to take a plea. I feel threatened and coerced your honor." He wrote that his counsel's communication with him had been "terrible," that they hardly ever came to visit him in jail, and that they would not file motions or submit evidence when he asked them to.

On January 9, 2023, Thurman pled guilty to conspiring to distribute 50 grams or more of methamphetamine. An attorney from Chivari's firm, Katryna Spearman, represented Thurman at the hearing. The court confirmed that Thurman had gone over the discovery with his attorneys, and then told him, "Ultimately, it has to be the defendant's choice to plead guilty. Your lawyers can't make you plead guilty. . . . [D]o you understand that? This is a decision only you can make." Thurman replied, "Yes, sir." The court asked, "Is this your decision?" Thurman again replied,

"Yes, sir." The court then went over how the sentencing guidelines might apply in Thurman's case, and Thurman confirmed that he understood how his sentence would be calculated.

After that colloquy, the court confirmed once again that Thurman was acting voluntarily: "I just want to make sure the record reflects you're not being forced into a guilty plea. Do you feel like you're being forced into this?" Thurman replied, "I don't know. . . . Somewhat." Thurman then conferred with Spearman off the record. Back on the record, Spearman explained that Thurman was "nervous about a potential trial" because he knew that "the evidence is not favorable." She added that Thurman felt a "threatening feeling" because "what's to come" if he didn't plead guilty was "even scarier than pleading guilty." The court asked Thurman, "Is that accurate, sir?" He replied, "Yes, sir." Later in the hearing, Thurman admitted that he conspired to distribute methamphetamine. The court accepted his guilty plea.

More than five months later—and after another change in counsel—Thurman submitted a motion to withdraw his guilty plea. In that motion, Thurman raised concerns about his prior counsel's failure to bring motions to suppress evidence, but he did not allege that his plea had been coerced. The district court denied the motion and scheduled a sentencing hearing. The court sentenced him to 210 months' imprisonment, applying a two-level sentencing enhancement for possession of a dangerous weapon. This appeal followed.

## II.

## A.

Thurman argues that the district court accepted his guilty plea in violation of Criminal Rule 11 because, he says, his plea was involuntary. Thurman did not object to the plea colloquy, so we review the court's acceptance of his plea for plain error. *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021).

Criminal Rule 11 provides that, "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises." Fed. R. Crim. P. 11(b)(2). A plea is involuntary when, for example, it results from "actual or threatened physical harm," "mental coercion overbearing the will of the defendant," or fear that makes the defendant unable rationally to weigh the decision to plead guilty. *Brady v. United States*, 397 U.S. 742, 750 (1970).

Here, during the plea colloquy, the court explained to Thurman that his lawyers could not force him to plead guilty; and Thurman confirmed that he understood this was a decision only he could make. Later in the hearing, the court asked him again whether he was being "forced" into the guilty plea, and he responded, "I don't know. . . . Somewhat." But then Thurman agreed with Spearman's characterization that his "threatening feeling" came from the hard choice he faced and his anxiety about a potential trial. Thurman's fear of the consequences of going to trial does not render his plea involuntary; rather, it shows that he understood the stakes of his decision.

As evidence that his plea was involuntary, Thurman points to the letter he wrote to the court on January 3, 2023. That letter said he felt that he was being "force[d] to take a plea," and that he felt "threatened and coerced." But Thurman has not alleged "actual or threatened physical harm" or "mental coercion" that would "overbear" his will. *Brady*, 397 U.S. at 750. Instead, in his letter, he complained that his attorneys were not "helpful," that they failed to communicate with him or visit him enough, and that they disagreed with him about certain evidentiary motions. These complaints, if true, do not obviously rise to the level of coercion. We therefore find no plain error in the court's acceptance of Thurman's guilty plea.

B.

Thurman argues that the district court erred in denying his motion to withdraw his guilty plea. We review the denial for an abuse of discretion. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).

A defendant has no absolute right to withdraw a guilty plea. *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). Instead, the defendant bears the burden of showing "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In determining whether a defendant has made this showing, courts consider, among other things, any delay in filing the motion to withdraw, the reason for the delay, whether the defendant has maintained his innocence, and whether withdrawal would prejudice the government. *See United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).

We give special emphasis to the motion's timing because this rule exists to "allow a hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (per curiam). For that reason, a defendant must move to withdraw his plea soon after he entered it, or else courts may view the motion as "a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.* (citation omitted). Here, Thurman waited over five months to file this motion—even longer than the defendant in *Alexander*. This delay weighs heavily against withdrawal. *See United States v. Carson*, 32 F.4th 615, 623-24 (6th Cir. 2022) (collecting cases).

Thurman argues his delay was justified because he changed counsel in March 2023—two months after he entered his guilty plea—and he told the magistrate judge then that he wanted to withdraw his plea. But Thurman waited another three months to file the motion under new counsel. We must measure the delay from the date the defendant entered his plea to the date he filed the

motion to withdraw it—not when he began to have second thoughts. *See Bashara*, 27 F.3d at 1181. For example, in *Bashara*, the defendant had said he regretted his plea just eleven days after he entered it, but then let six weeks pass before he filed the motion to withdraw it. *Id.* We held that he waited too long, despite his explanation that he had trouble contacting his attorney. *Id.* Here, the delay was longer, and the explanation the same. Hence, Thurman's reason for delay did not justify withdrawing his plea.

Moreover, as the district court noted, Thurman did not consistently maintain his innocence. Even in his motion to withdraw the plea, he focused on disagreements with his attorneys about motions to suppress evidence. The court also found that the government would be prejudiced if it were to resume its investigation and prepare for trial a second time. We see no reason to question any of these findings. The court did not abuse its discretion in refusing to allow Thurman to withdraw his plea.

C.

Finally, Thurman argues that the district court erred when it applied a two-level sentencing enhancement for possessing a dangerous weapon while committing a drug-trafficking offense. U.S.S.G. § 2D1.1(b)(1). We review the court's factual findings for clear error. *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020).

To apply this enhancement, the court must find "by a preponderance of the evidence that the defendant either actually or constructively possessed the weapon" while trafficking drugs. *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (citation omitted). Constructive possession of a weapon means "the ownership, or dominion or control" over the weapon itself, or "dominion over the premises" where the weapon is located. *Id.* (citation and emphasis omitted).

The enhancement applies if the weapon was "present" during the offense, "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A).

Here, Thurman regularly distributed methamphetamine from two different addresses—Bettman and Glen Este—and police found a gun at each address. He received his mail at Glen Este, and he regularly spent the night at Bettman. Thus, Thurman had constructive possession of both guns because he exercised "dominion over the premises" where the guns were found. The enhancement therefore applies because Thurman has not shown that it is "clearly improbable" that the guns were connected to his drug dealing.

*    *    *

The district court's judgment is affirmed.